1999 PA Super. 8

**Robert NEY, Appellant,**

v.

**Lawrence S. AXELROD, M.D., and Medtox Laboratories, Inc., Appellee.**

Superior Court of Pennsylvania.

Argued Dec. 15, 1998.

Filed Jan. 14, 1999.

Paul R. Beckert, Jr., Langhorne, for appellant.

Daniel J. Davis, Philadelphia, for Medtox, appellee.

David K. Kwass, Philadelphia, for Axelrod, appellee.

Before JOHNSON and MONTEMURO *, JJ., and CIRILLO, President Judge Emeritus.

CIRILLO, President Judge Emeritus:

¶1 Robert Ney (Ney) appeals from the order of the Court of Common Pleas of Bucks County granting summary judgment in favor of Appellees Lawrence S. Axelrod, M.D. (Axelrod) and Medtox Laboratories, Inc. (Medtox).[1] We affirm.

¶2 On July 31, 1997, Robert Ney filed a negligence action against Appellees Axelrod and Medtox. Axelrod and Medtox had been hired by Ney's prospective employer, Sulkatronic Chemical, Inc. (Sulkatronic), to perform pre-employment drug screening on Ney's urine samples. While Ney had been offered a job at Sulkatronic, the employer required drug screening as a final stage in the employment-hiring process. When Ney's urine samples tested positive for barbiturates, his application for employment was denied.

¶3 In his complaint, Ney alleges that Appellees negligently performed the drug

---

* Retired Justice assigned to the Superior Court.

1. This order is final and appealable as it disposes of all claims and all parties. Pa.R.A.P. 341(b);

*Sweener v. First Baptist Church of Emporium,* 516 Pa. 534, 533 A.2d 998 (1987).

screening tests;[2] he asserts that he had never ingested any illegal substances, making it impossible to test "positively." Ney also claims that the Appellees' negligence precluded him from obtaining employment at a significantly higher salary at Sulkatronic than his present job. Axelrod filed preliminary objections to the complaint that were denied by the trial court.

¶ 4 Appellees filed motions for summary judgment alleging that they did not owe Ney a duty since they had been hired by Sulkatronic, a third party, to perform the drug screening tests. On May 29, 1998, the trial court granted summary judgment in favor of Appellees. Ney filed a timely notice of appeal from this order. On appeal, he presents the following issue for our review:

> Where a prospective employee is damaged by the improper labeling and testing of a urine sample and the results improperly recorded deny him the offered employment position, should not those negligent parties responsible be liable to the prospective employee for their negligence?

¶ 5 Our standard of review in cases of summary judgment is well settled. This court will only reverse the trial court's entry of summary judgment where there was an abuse of discretion or an error of law. *Merriweather v. Philadelphia Newspapers, Inc.*, 453 Pa.Super. 464, 684 A.2d 137, 140 (Pa.Super.1996). Summary judgment is proper when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035.2, 42 Pa. C.S.A. In determining whether to grant summary judgment a trial court must resolve all doubts against the moving party and examine the record in a light most favorable to the non-moving party. *Id.* Summary judgment may only be granted in cases where it is clear and free from doubt the moving party is entitled to judgment as a matter of law. *Id.*

¶ 6 Ney claims that as a matter of public policy Appellees owed him a duty of care in handling his urine sample and reading the results of the test. Specifically, Ney asserts that as a result of Appellees' negligence he was denied employment at Sulkatronic and will be detrimentally affected in his pursuit of future employment.

¶ 7 To establish a viable cause of action in negligence, the pleader must aver in his complaint the following elements:

1. A duty, or obligation, recognized by the law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks.

2. A failure on the person's part to conform to the standard required: a breach of the duty.

3. A reasonably close causal connection between the conduct and the resulting injury.

4. Actual loss or damage resulting to the interest of another.

*Ferry v. Fisher*, 709 A.2d 399, 402 (Pa.Super.1998), *citing* Prosser & Keeton on Torts, § 30 (5th ed.1984). *See also J.E.J. v. Tri–County Big Brothers/Big Sisters, Inc.*, 692 A.2d 582 (Pa.Super.1997) (the elements for a cause of action based on negligence are a duty, a breach of that duty, a causal relationship between the breach and the resulting injury, and an actual loss). Moreover, "the mere happening of an accident does not entitle the injured person to a verdict; [a] plaintiff must show that defendant owed him a duty and that duty was breached." *Engel v. Parkway Co.*, 439 Pa. 559, 562, 266 A.2d 685, 687 (1970).

¶ 8 Where a third party has sponsored a medical examination of a person and the person later alleges negligence on the part of the physician who performed the examination, that person cannot succeed on a negligence cause of action. *Tomko v. Marks*, 412 Pa.Super. 54, 602 A.2d 890 (Pa.Super.1992). In *Tomko*, our court held that where there is no therapeutic purpose for medical services provided and no evidence of a resulting professional relationship between

---

**2.** Specifically, Ney's complaint alleges that the Appellees committed an error "in either the drawing or collecting, or the reading" of the sample.

the medical provider and the plaintiff, we will impose no duty and, therefore, no resultant liability on the provider. *Id.* at 891.

¶ 9   In the present case, Ney did not contract for Appellees' services or seek or receive medical advice or treatment from Appellees. In fact, it is uncontroverted that the drug screening was performed by Appellees at the behest of Ney's prospective employer that required such testing as a matter of routine procedure for its hiring process. Accordingly, Ney did not have the required physician-patient relationship based upon a therapeutic purpose that would give rise to a duty on the part of Appellees. *Tomko, supra*; *Ferry, supra*; *Tri–County Big Brothers/Big Sisters, Inc., supra.*

¶ 10   Despite this conclusion, Ney would have this court create a public policy exception to this general "no duty" rule and impose liability in the instant case upon Appellees. We refuse to do so.

¶ 11   In *Tomko*, the plaintiff also argued that the court should create a public policy exception and find the defendant liable for his negligence in failing to properly read his chest x-ray. The x-ray which had been ordered as part of a pre-employment examination indicated that the plaintiff's condition was normal when, in actuality, he had a cancerous condition. The plaintiff alleged that the defendant's omission had denied him the opportunity of an early diagnosis. The *Tomko* plaintiff's policy argument differed from Ney's present claim on appeal, however, as it was based upon the public policy of a duty owed to patients by doctors. The *Tomko* court found that it could not impose liability upon the defendant, even on policy grounds, due to the non-existence of a physician-patient relationship.

¶ 12   In the present case, Ney claims that the Appellees' duty to properly perform the drug screening was owed not only to the party with whom it contracted (i.e., Ney's prospective employer), but also to him because of the negative effects it will have upon his future applications for employment.

¶ 13   Based upon the facts of this case, we are not willing to create a theory of liability for negligent doctors or medical laboratories that have contracted with third parties for employment-related testing. Such causes of action do not identify a substantial harm to an identifiable and readily discernable class of plaintiffs such that we feel compelled to create liability based on a public policy rationale. *Ervin v. American Guardian Life Assurance Co.*, 376 Pa.Super. 132, 545 A.2d 354 (Pa.Super.1988) (a physician who is retained by a third party to conduct an examination of another person is not liable to the examinee for any losses he suffers as a result of the physician's report or conclusions). Such alleged future harm to individuals, including Ney, is speculative at best. *Cf. Althaus v. Cohen, et al.*, 710 A.2d 1147 (Pa.Super.1998) (*en banc*), appeal granted, Nos. 306 & 307 W.D. Allocatur Dkt.1998, 1998 Pa. LEXIS 2332 (October 27, 1998) (court held that a psychiatrist owed a duty of care to a patient's family where the psychiatrist misdiagnosed the patient as having been sexually abused by a family member; court carefully weighed social and policy considerations involved in exposing child sex abuse and the resultant harm when such abuse is misdiagnosed); *DiMarco v. Lynch Homes–Chester County, Inc.*, 384 Pa.Super. 463, 559 A.2d 530 (Pa.Super.1989), affirmed 525 Pa. 558, 583 A.2d 422 (1990) (court found that physician owed duty of reasonable care to non-patient who contracted hepatitis from physician's patient due to the importance of preventing the spread of communicable diseases and protecting the health and welfare of our citizens).

¶ 14   Furthermore, we are reticent to lend credence to future plaintiffs' claims that they have suffered a "loss of employment advancement or opportunity" in such a situation where a plaintiff has not passed the final stages in a hiring process, and, therefore, is not even an "employee." In fact, "[i]t has always been the rule that an employer may be selective about the persons he employs as long as he does not unlawfully discriminate among the applicants." *Philadelphia Elec. Co. v. Human Relations Comm. (English)*, 68 Pa.Cmwlth. 212, 448 A.2d 701, 708 (1982). As such, our decision today upholds the principles underlying this Commonwealth's "employment-at-will" doctrine and freedom in employment-related decisions. *See Hershberger v. Jersey Shore Steel Co.*, 394 Pa.Su-

per. 363, 575 A.2d 944 (Pa.Super.1990) (court failed to recognize an exception to the "employment-at-will" doctrine where plaintiff as a new employee was placed on sixty days probation and failed blood and urine tests required by employer; plaintiff had no wrongful discharge cause of action as a result of employer's refusal to rehire him); *see also English, supra* (an employer who refuses to hire someone solely because that person fails pre-employment tests is discriminating against that person, but not unlawfully).

¶ 15 Accordingly, the trial court properly granted summary judgment because it is clear that Appellees are entitled to judgment as a matter of law. *Merriweather, supra*; Pa.R.C.P. 1035.2. *See also Ervin, supra* (citing Texas case that found a doctor examining a job applicant on behalf of a prospective employer owes no duty to the applicant to diagnose a disease; the only care owed by such a relationship is to avoid injuring the applicant).

¶ 16 Order affirmed.

