821 A.2d 1215

**Renee L. SHARPE, Appellant**

**v.**

**ST. LUKE'S HOSPITAL, Appellee,**

**Laboratory Corporation of America, Med Express and Henry Gardner, M.D., Additional Defendants/Appellees.**

Supreme Court of Pennsylvania.

Argued Nov. 13, 2001.

Decided April 25, 2003.

Timothy M. Kolman, Langhorne, Marc Elliot Weinstein, for Appellant, Renee L. Sharp.

Paul F. Laughlin, Pittsburgh, William Francis Harris, Allentown, for Appellee, St. Lukes Hosp.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## *OPINION*

JUSTICE SAYLOR.

We allowed appeal in this matter to determine whether a hospital, which collects samples for drug testing under a contract with an employer, owes a duty of care to the employee undergoing that testing.

Appellant Renee Sharpe ("Sharpe"), a courier for Federal Express, was directed to report to St. Luke's Hospital (the "Hospital") to undergo routine, random drug screening. Pursuant to a contract with Federal Express, the Hospital collected urine samples and then forwarded those samples to an outside laboratory for testing. On the day in question, Sharpe maintains, numerous events transpired at the Hospital that affected the chain of custody associated with her urine sample, as a result of which it was misidentified and/or mishandled. Consequently, Sharpe alleges, the urine sample falsely tested positive for cocaine. When she disputed that outcome, the Hospital conducted an internal investigation at the request of

Federal Express. Following the investigation, through which the Hospital verified the chain of custody, Sharpe's employment with Federal Express was terminated.

Sharpe thereafter instituted an action against the Hospital in the Court of Common Pleas of Lehigh County, alleging that the Hospital "had a duty of care to perform specimen collection in accordance with the Code of Federal Regulations governing specimen collection and in accordance [with] the requirements placed upon a medical facility performing to the appropriate and generally accepted standards [for] urine specimen collection." Citing to numerous instances in which the Hospital's actions allegedly did not conform to these standards of care, and contending that such failures resulted in a false positive drug test, Sharpe averred direct and immediate harm to both her reputation and economic status resulting from the termination of her employment. Sharpe proceeded to assert claims of, *inter alia*, negligence and deliberate and reckless misconduct against the Hospital.[1] Sharpe did not assert any claim against the entities that had performed the testing and reported the results to Federal Express; the Hospital, however, joined those entities as additional defendants.

The Hospital ultimately filed a motion for summary judgment, maintaining, *inter alia*, that Sharpe could not establish that it owed her a duty that is recognized by law, a prerequisite to her negligence claim. Specifically, the Hospital asserted that, because it collected Sharpe's specimen pursuant to its contract with Federal Express, no professional or contractual relationship had been created between it and Sharpe, thus obviating the existence of a duty on its part.

Following argument, the trial court agreed with the Hospital's position, explaining in its order granting summary judgment that, where a third party has engaged an entity to perform employment drug testing, the employee may not

---

1. Although Sharpe also asserted claims of defamation, fraudulent misrepresentation and breach of contract, she voluntarily withdrew those claims before the trial court. Moreover, while Sharpe did not withdraw her claim for deliberate and reckless misconduct, the trial court and the Superior Court engaged in no discussion of that count. Nor do the parties advance any argumentation along these lines.

thereafter maintain a negligence claim against that entity. *See Ney v. Axelrod,* 723 A.2d 719 (Pa.Super.1999); *Tomko v. Marks,* 412 Pa.Super. 54, 602 A.2d 890 (1992) (Olszewski, J., with two Judges concurring in the result). On Sharpe's appeal, the Superior Court affirmed in a memorandum opinion, also citing to *Ney* and *Tomko* and rejecting Sharpe's position that public policy would support the imposition of a duty upon the Hospital. As to the latter point, the Superior Court reasoned that, despite Sharpe's attempt to distinguish precedent based upon her status as an existing employee, the duty that she advocated would not apply to a readily discernible and identifiable class and would thus be overbroad. Moreover, the court distinguished the out-of-state authority cited by Sharpe, *see Stinson v. Physicians Immediate Care, Ltd.,* 269 Ill.App.3d 659, 207 Ill.Dec. 96, 646 N.E.2d 930 (1995), explaining that the plaintiff in that case had brought a negligence action against the laboratory that had collected the sample, performed the drug testing, and reported the results to the employer. Here, by contrast, Sharpe had sought relief solely from the Hospital; the Superior Court declined to create a duty based upon the "limited, passive role that it played in this case."

President Judge McEwen authored a dissenting statement, expressing his view that the doctrine of privity should not be so rigidly applied as to preclude the imposition of a duty upon entities that present themselves as engaging in a specialty or as possessing a degree of expertise for which licensure by a government authority is required. Moreover, President Judge McEwen noted that, while Sharpe did not assert a claim against the laboratory and the individuals that actually performed the test, she nonetheless alleged a plethora of failures on the part of the Hospital concerning its collection and handling of the urine specimen. President Judge McEwen also found it critical that Sharpe had already attained employment with Federal Express for purposes of imposing a duty of reasonable care, given the resultant loss of employment and the stigma inevitably attaching to her subsequent attempts to obtain employment. He would have imposed a duty upon any

hospital or laboratory involved in any stage of drug testing to adhere to a standard of reasonable and prudent conduct to prevent an undue risk of harm from false positive test results. Judge Olszewski issued a concurring memorandum, acknowledging that the court was bound by *Ney* and *Tomko*, but indicating that he would have reached a different result in those cases. Unlike President Judge McEwen, however, Judge Olszewski would not have distinguished this matter on the basis of Sharpe's existing employment relationship with Federal Express; instead, finding the Superior Court cases to "unnecessarily perpetuate the outdated requirement of privity," he invited either the *en banc* Superior Court or this Court to overrule the relevant line of decisions.

A cause of action in negligence requires allegations that establish the breach of a legally recognized duty or obligation that is causally connected to damages suffered by the complainant. *See Martin v. Evans*, 551 Pa. 496, 502, 711 A.2d 458, 461 (1998). As the Hospital's motion for summary judgment, as well as the reasoning of the trial court and the Superior Court, focused solely upon the existence of a duty extending from the Hospital to Sharpe, the analysis implicated by this matter is confined to that narrow inquiry. In this regard, Sharpe continues to maintain that, because of the foreseeable ramifications of improperly performing employment-related drug testing, the entities involved in the process should, as a matter of public policy, be held responsible for the consequences of their errors. Sharpe attempts to restrict the scope of the duty that she advocates, focusing upon the existence of a current employment relationship with Federal Express and distinguishing the present factual scenario from instances pertaining to prospective employment. The Hospital, relying in large part on *Ney*, focuses upon Sharpe's third-party status to its contract with Federal Express and argues that a legally enforceable duty cannot be based upon such third-party standing. In addition, the Hospital emphasizes that Sharpe's claim, as indicated in her brief, seeks to impose liability against entities performing drug tests, in this case, the laboratory; such liability should not, however, extend to the

Hospital, which did not test the sample or provide diagnosis and treatment.

■■■ The concept of duty is rooted in public policy, and the determination of whether a duty should be imposed upon an alleged tortfeasor involves a balancing of the following factors:

> (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution.

*Althaus v. Cohen,* 562 Pa. 547, 553, 756 A.2d 1166, 1169 (2000). The inquiry is regarded as a legal determination, assigned in the first instance to the trial court and subject to plenary appellate review. *Cf. Emerich v. Philadelphia Ctr. for Human Dev., Inc.,* 554 Pa. 209, 233, 720 A.2d 1032, 1044 (1998) ("While the existence of a duty is a question of law, whether there has been a neglect of such duty is generally for the jury"); *see also Brisbine v. Outside In Sch. of Experimental Educ., Inc.,* 799 A.2d 89, 95 (Pa.Super.2002) ("Whether a duty exists is a question of law for the trial court to decide").

■■■ As to the first of the *Althaus* factors, a sufficient relationship exists between the Hospital and Sharpe to justify the imposition of a duty upon the Hospital to exercise reasonable care in the collection and handling of the urine specimen, despite the absence of a contract between the two parties. Specifically, Sharpe personally presented herself to the Hospital, which was aware of the purpose of the urine screening; the Hospital, in turn, should have realized that any negligence with respect to the handling of the specimen could harm Sharpe's employment. *Accord Stinson,* 207 Ill.Dec. 96, 646 N.E.2d at 933 (holding that, although privity of contract may not have existed, "the plaintiff was known to the defendant, and, when the defendant analyzed the plaintiff's specimen, it knew that negligent testing could wrongfully identify the plaintiff as a drug user"); *Reed v. Bojarski,* 166 N.J. 89, 764 A.2d 433, 442–43 (2001) (stating that "[a] professionally unrea-

sonable examination that is detrimental to the examinee is not immunized from liability because a third-party authorized or paid for the exam"); *Bratt v. International Bus. Machs. Corp.*, 392 Mass. 508, 467 N.E.2d 126, 136 n. 21 (1984) (recognizing that, while a physician-patient relationship is not created when the employer hires the physician, there nonetheless remains the duty to "exercise reasonable care and skill in their relationship with the employees"). *But see SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 356 (Tex.1995) (holding that a laboratory conducting drug testing under a contract with an employer has no relationship with and, thus, no duty to a prospective employee).

The characteristics of the relationship between Sharpe and the Hospital that justify the imposition of a duty also render *Tomko* distinguishable. The employee in that case was seeking to assert a claim in negligence for a failure to diagnose cancer, conduct that was not directly subsumed within the physician's obligations under his contract with the employer for a pre-employment physical examination. *See Tomko*, 412 Pa.Super. at 58, 602 A.2d at 892.[2] Moreover, in concluding that the defendants in *Tomko* and *Ney* owed no duty to the employees, the Superior Court focused solely upon the parties to a conventional physician-patient relationship and restricted its analysis to the absence of such a relationship, without due consideration of the other factors mentioned in *Althaus*. *See Ney*, 723 A.2d at 722; *Tomko*, 412 Pa.Super. at 58, 602 A.2d at 892.[3]

**2.** The scope of the obligations assumed by a physician under a contract with an insurance company, and the absence of affirmative conduct on the part of the physician that would itself result in direct harm to the examinee, also provide a basis for distinguishing those Superior Court cases that have found the lack of a duty between the physician and the examinee. *See, e.g., Promubol v. Hackett*, 454 Pa.Super. 622, 627, 686 A.2d 417, 420 (1996) (noting the absence of physician-patient relationship where the examination occurred at the behest of an insurance company in relation to the purchase of additional insurance coverage); *Ervin v. American Guardian Life Assurance Co.*, 376 Pa.Super. 132, 139, 545 A.2d 354, 358 (1988) (same).

**3.** The dissenting and concurring memoranda from the Superior Court frame the inquiry in terms of privity, which, along with the plaintiff's status as a third-party beneficiary of a contract, may have a bearing

Examining the remaining factors, while the Hospital's participation in the drug testing process certainly has social utility, the substantial harm deriving from inaccurate test results, which, in the context of Sharpe's employment-related screening, allegedly took the form of a termination of gainful employment, would be a foreseeable consequence of a breach of the duty of reasonable care. *Accord Stinson,* 207 Ill.Dec. 96, 646 N.E.2d at 933 ("the injury, that the plaintiff would be terminated from his employment, is not only foreseeable, but also is a virtual certainty in the event of a positive drug test result"); *Duncan v. Afton, Inc.,* 991 P.2d 739, 744–45 (Wyo. 1999) (acknowledging that an injury to an employee was a foreseeable consequence of improper collecting and handling of a specimen).[4] As to the consequences of imposing a duty upon the Hospital, that entity is in the best position to ensure the non-negligent collection and handling of the specimen, and thus, it possesses the ability to limit its liability by acting reasonably with respect to employee drug screening. *Accord*

upon the viability of a claim based upon an alleged violation of a contractual term. *See, e.g., Scarpitti v. Weborg,* 530 Pa. 366, 371–72, 609 A.2d 147, 149–50 (1992) (discussing an action concerning the scope of legal duties arising out of a contract in the context of privity and intended beneficiaries); *Hicks v. Saboe,* 521 Pa. 380, 384–85, 555 A.2d 1241, 1243–44 (1989). Privity of contract, however, is not an essential prerequisite to the existence of a duty, as the law may operate under certain circumstances to impose a duty in favor of a third party against one operating under a contract, without reference to the terms of that contract. *See, e.g., Prost v. Caldwell Store, Inc.,* 409 Pa. 421, 427, 187 A.2d 273, 276 (1963) (distinguishing between a duty imposed by law and a duty self-imposed by a contract); *Doyle v. South Pittsburgh Water Co.,* 414 Pa. 199, 207, 199 A.2d 875, 878 (1964) (same); *cf. DiMarco v. Lynch Homes,* 525 Pa. 558, 561–62, 583 A.2d 422, 424–25 (1990) (recognizing a duty on the part of a physician to advise his patient concerning the effects of a communicable disease so as to avoid foreseeable harm to others).

**4.** As President Judge McEwen suggested in his dissent, *Ney* may be distinguished on the basis that the employee there was seeking damages for the loss of potential employment arising from pre-employment drug screening. While the Superior Court classified such a claim for damages as speculative and insufficiently substantial to support imposition of the advocated duty, *see Ney,* 723 A.2d at 722, Sharpe alleges that, as a result of the Hospital's negligence concerning the handling of her urine specimen, her existing employment with Federal Express was terminated, thus setting forth a discrete and identifiable injury that she directly attributes to the Hospital's purported negligence.

*Lewis v. Aluminum Co. of Am.,* 588 So.2d 167, 170 (La.Ct. App.1991) (explaining that extending liability to a drug testing laboratory does not impose an excessive burden; "[i]nstead, it should foster a greater sense of responsibility within it to perform its drug testing services in a skillful and competent manner"). Finally, as President Judge McEwen observed, the increase in mandatory employment-related drug screening and the potential ramifications of false-positives create a substantial public interest in ensuring that the medical facilities involved in the testing exercise a reasonable degree of care to avoid erroneous test results occurring because of negligence. *Cf. Duncan,* 991 P.2d at 745 (explaining that the drug testing services "demand adequate protection of employees' interests to prevent future harm"); *Stinson,* 207 Ill.Dec. 96, 646 N.E.2d at 934 ("The risk of harm in our society to an individual because of a false-positive drug test is so significant that failure to find protection under our law would be a step backwards for the protection of the individual").

Accordingly, we hold that the Hospital owed Sharpe a duty of reasonable care with regard to collection and handling of her urine specimen for the employment-related drug testing; it is, of course, for the jury to determine whether the Hospital breached such duty.

The order of the Superior Court is reversed, and the matter is remanded for further proceedings.

Former Chief Justice FLAHERTY and former Chief Justice ZAPPALA did not participate in the decision of this case.