J-S40017-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DANIEL SLOVER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| SABINA VAN WHY AND PEIFER & | : | |
| GROSS, INC. D/B/A RUSTIC ACRES | : | |
| MOBILE HOME PARK | : | |
| | : | |
| Appellees | : | No. 689 EDA 2020 |

Appeal from the Judgment Entered February 27, 2020
In the Court of Common Pleas of Pike County
Civil Division at No(s): No. 2015-01426

BEFORE: SHOGAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KING, J.: **FILED NOVEMBER 18, 2020**

Appellant, Daniel Slover, appeals from the judgment entered in the Pike

County Court of Common Pleas in favor of Appellee, Peifer & Gross, Inc. d/b/a

Rustic Acres Mobile Home Park, in this negligence action.[1] We affirm.

The trial court opinion set forth the relevant facts of this appeal as

follows:

> On November 20, 2013, [Appellant] was delivering
> packages for a company called Mikmar Group, an
> independent contractor for FedEx. Rustic Acres Mobile
> Home Park ("Rustic Acres") was on his delivery route.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Following trial, judgment was also entered in favor of Appellant and against
Sabina Van Why only, based upon the jury's finding that Ms. Van Why was
negligent. Ms. Van Why has not filed a brief on appeal, even though she is
represented by counsel and listed as an appellee on this Court's docket.

Rustic Acres is comprised of one parcel of land which is owned by [Appellee].

On the date of the incident, [Appellant] was delivering a package to the mobile home owned by Sabina Van Why. [Appellant] approached the front of Ms. Van Why's home in order to leave the package by her door. Ms. Van Why had put makeshift steps made of wood pallets leading up to her door. These pallets were covered with leaves and debris on the date and time at issue. [Appellant] was injured as he was stepping down onto what he thought was a solid step. Instead, when he stepped down his left foot slid and twisted in between the slats of a pallet. Damian Zurawski, a trainee who was accompanying [Appellant] on his delivery route that day, witnessed the injury and tended to [Appellant] immediately after he was injured. [Appellant] and Mr. Zurawski were able to finish their delivery route that day with [Appellant] driving and Mr. Zurawski being the one to get out of the vehicle to deliver the remaining packages.

After finishing the delivery route, [Appellant] returned to his employer's facilities and drove himself to the hospital. [Appellant] testified that the hospital performed an x-ray and told him that his foot was sprained. [Appellant] followed up with Dr. Henderson at Scranton Orthopedics two (2) days later and was told again that it was a sprain. He was instructed to take ibuprofen for the pain and to wear a boot on his left foot. [Appellant] went back to Scranton Orthopedics approximately one or two weeks later and followed up with Dr. Siebecker. He recommended that [Appellant] begin physical therapy. [Appellant] did participate in physical therapy for approximately two (2) weeks but subsequently stopped treatment due to financial reasons and his feeling that the treatment was not working.

[Appellant] subsequently ended his employment with FedEx approximately four to five months after the incident and began working for Derr Flooring. [Appellant's] subsequent job with Derr Flooring involved delivering flooring materials and was more physically demanding than his delivery position with FedEx as it involved handling bundles of flooring weighing between thirty (30) and fifty (50) pounds.

In August of 2014, [Appellant] returned to Scranton

Orthopedics to see Dr. Siebecker, who recommended that [Appellant] stop working and have another MRI. In September of 2014, [Appellant] had an appointment with Dr. Scalzo, a foot specialist. Dr. Scalzo initially recommended a cortisone shot but recommended surgery after reviewing the MRI.

[Appellant] had surgery in February of 2015, which required him to take two (2) months off from work. He remained at his position with Derr Flooring for approximately five (5) months after the surgery until leaving same to begin working as an EMT that fall. He worked as an EMT for about two (2) years before accepting a position at Pocono Mountain Dairy. He remained there until approximately one week prior to the trial when he stated he had been laid off.

(Trial Court Opinion, filed May 4, 2020, at 1-3).

On October 6, 2015, Appellant filed a complaint alleging he suffered injuries as a result of Ms. Van Why's negligence for failing to "maintain the premises in a proper and safe manner[.]" (Complaint, filed 10/6/15, at ¶14(b)). In a separate count, Appellant claimed Appellee was negligent for "failing to enact, police, and/or enforce park rules against the maintenance of hazardous conditions, construction of dangerous walkways, and/or accumulation of debris upon the premises[.]" (*Id.* at ¶19(l)).

On February 11, 2020, following a two-day jury trial, the jury returned a verdict finding Ms. Van Why was negligent, and Appellee was not negligent. The jury also found that Ms. Van Why's negligence was a factual cause of harm to Appellant. The jury awarded damages in an amount equal to Appellant's stipulated medical expenses and lost earnings. The jury awarded zero dollars for Appellant's non-economic loss.

Appellant timely filed post-trial motions on February 18, 2020. In his motions, Appellant argued: 1) the jury's decision to award zero dollars for non-economic loss was against the weight of the evidence; 2) Appellee exercised considerable control over the premises, and the jury's verdict finding Appellee not negligent was against the weight of the evidence; and 3) the trial court erroneously failed to admit certain evidence demonstrating Appellee's control over the premises. Also on February 18, 2020, the court denied Appellant's post-trial motions.

On February 24, 2020, Appellant filed a premature notice of appeal. That same day, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, which Appellant timely filed. On February 27, 2020, Appellee filed a *praecipe* for entry of judgment in favor of Appellee and against Appellant, as well as judgment in favor of Appellant and against Ms. Van Why only.[2]

_____

[2] Ordinarily, an appeal properly lies from the entry of judgment, not from the order denying post-trial motions. **See generally Johnston the Florist, Inc. v. TEDCO Const. Corp.**, 657 A.2d 511, 516 (Pa.Super. 1995) (*en banc*). Nevertheless, a final judgment entered during the pendency of an appeal is sufficient to perfect appellate jurisdiction. **Drum v. Shaull Equipment and Supply Co.**, 787 A.2d 1050 (Pa.Super. 2001), *appeal denied*, 569 Pa. 693, 803 A.2d 735 (2002). Here, Appellant filed a notice of appeal prematurely on February 24, 2020, prior to the entry of judgment. Nevertheless, Appellant's notice of appeal relates forward to February 27, 2020, the date judgment was entered. **See** Pa.R.A.P. 905(a)(5) (stating notice of appeal filed after court's determination but before entry of appealable order shall be treated as filed after such entry and on day thereof). Hence, no jurisdictional defects impede our review.

Appellant raises three issues for our review:

> Should a new trial be granted where the jury's award of nothing for non-economic damages was against the weight of the evidence?
>
> Should a new trial be granted where the jury's finding that [Appellee] was not negligent was against the weight of the evidence?
>
> Did the trial court abuse its discretion by excluding certain evidence that Appellee … controlled the subject premises?

(Appellant's Brief at 5).

In his first issue, Appellant asserts the trial evidence demonstrated his pain and suffering as a result of the injury. Appellant emphasizes the pain in his left foot began immediately after his fall, and it continued through the date of his surgery. Even after the surgery, Appellant maintains he still experiences chronic pain. Appellant contends the pain has an "ongoing impact … upon [his] activities of daily living." (*Id.* at 20). Appellant insists he presented competent expert testimony from Dr. Scalzo to support his claims for pain and suffering. Based upon the foregoing, Appellant concludes the jury's award of zero dollars for non-economic damages was against the weight of the evidence, and he is entitled to a new trial on this basis. We disagree.

The following standard of review applies to a court's denial of post-trial motions:

> [First, we] review the [trial] court's alleged mistake and determine whether the court erred, and, if so, [we then ask] whether the error resulted in prejudice necessitating a new trial. If the alleged mistake concerned an error of law, we will scrutinize for legal error. Once we determine whether

an error occurred, we must then determine whether the trial court abused its discretion in ruling on the request for a new trial.

***Avery v. Cercone***, 225 A.3d 873, 877 (Pa.Super. 2019) (quoting ***ACE Am. Ins. Co. v. Underwriters at Lloyds and Co.***, 939 A.2d 935, 939 (Pa.Super. 2007), *aff'd*, 601 Pa. 95, 971 A.2d 1121 (2009)).

Regarding challenges to the weight of the evidence:

A new trial will be granted on the grounds that the verdict is against the weight of the evidence where the verdict is so contrary to the evidence it shocks one's sense of justice. An appellant is not entitled to a new trial where the evidence is conflicting and the finder of fact could have decided either way….

An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or [the judgment is] the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record, discretion is abused. We emphasize that an abuse of discretion may not be found merely because the appellate court might have reached a different conclusion, but requires a showing of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous.

… This [C]ourt has recognized that a weight of the evidence challenge concedes that there was evidence sufficient to sustain the verdict, but the verdict was against the weight of the evidence. We may not substitute our judgment for that of the trial court, we must only decide whether the trial court abused its discretion. Credibility issues are determined by the jury, and this [C]ourt rarely overturns the factual findings of a jury that are based on determinations of credibility, because we are confined to review a cold record.

***Adkins v. Johnson & Johnson***, 231 A.3d 960, 964-65 (Pa.Super. 2020)

- 6 -

(quoting *Fanning v. Davne*, 795 A.2d 388, 393-94 (Pa.Super. 2002), *appeal denied*, 573 Pa. 697, 825 A.2d 1261 (2003)).

"As a general proposition[,] victims indeed must be compensated for all that they lose and all that they suffer from the tort of another." *Catlin v. Hamburg*, 56 A.3d 914, 924 (Pa.Super. 2012), *appeal denied*, 621 Pa. 662, 74 A.3d 124 (2013) (quoting *Casselli v. Powlen*, 937 A.2d 1137, 1139 (Pa.Super. 2007)).

> The Supreme Court of Pennsylvania in *Davis v. Mullen*, 565 Pa. 386, 773 A.2d 764, 767 (2001) distinguished between two lines of cases where a jury awarded medical expenses or lost wages, but awarded nothing for pain and suffering. A jury's award of $0 for pain and suffering could be appropriate when the trial judge rationally concludes that the jury reasonably found that (1) the plaintiff experienced no pain and suffering or (2) a pre-existing condition caused all of the plaintiff's alleged pain and suffering. *Id.* at 767; *see e.g., Boggavarapu v. Ponist*, 518 Pa. 162, 542 A.2d 516 (1988), *Catalano v. Bujak*, 537 Pa. 155, 642 A.2d 448 (1994). On the other hand, when a jury awarded damages for medical expenses but nothing for pain and suffering, a trial judge may order a new trial if the plaintiff's injuries were so severe that such an award was utterly irrational. *Davis*, 773 A.2d at 766; *see e.g., Todd v. Bercini*, 371 Pa. 605, 92 A.2d 538 (1952) and *Yacabonis v. Gilvickas*, 376 Pa. 247, 101 A.2d 690 (1954); *see also Marsh v. Hanley*, 856 A.2d 138 (Pa.Super. 2004).

*Avery, supra* at 880.

"[T]he existence of compensable pain is an issue of credibility and juries must believe that plaintiffs suffered pain before they compensate for that pain." *Davis, supra* at 396, 773 A.2d at 769.

> [A] jury is always free to believe all, part, some, or none of the evidence presented. Thus, while the jury

may have concluded that [the plaintiff] suffered some painful inconvenience for a few days or weeks after the accident, it may also have concluded that [the plaintiff's] discomfort was the sort of transient rub of life for which compensation is not warranted…. [T]he determination of what is a compensable injury is uniquely within the purview of the jury.

In light of the wide latitude afforded juries on the pain-and-suffering question, a jury is always free to award $0 for pain and suffering. The question then becomes whether such a verdict is against the weight of the evidence such that it shocks the conscience of the trial court.

*Avery, supra* at 879 (quoting *Majczyk v. Oesch*, 789 A.2d 717, 725-26 (Pa.Super. 2001) (*en banc*)).

Instantly, Appellant testified that he went back to work, albeit on light duty, approximately one week after his fall. (*See* N.T. Trial, 2/10/20, at 144). Although Appellant initially sought medical attention, x-rays revealed nothing more than a sprain. (*Id.* at 152). Appellant stopped attending physical therapy after two weeks, before he had completed the course of treatment. (*Id.* at 153). In January 2014, a little more than a month after the accident, Appellant commenced a new job that required him to lift heavier loads "over rough terrain up and down stairs." (*Id.* at 145).

Appellant did not seek further medical treatment until August 2014, which culminated with the surgery in February 2015. (*Id.* at 154-55). After the surgery, which Dr. Scalzo characterized as creating a "good fusion," Appellant had another office visit in November 2015. (*See* N.T. Deposition of Dr. Scalzo, 1/10/20, at 36). At the conclusion of that visit, Dr. Scalzo

recommended that Appellant return for reassessment in three months, but Appellant did not comply. (**Id.** at 37). In fact, Appellant did not return to Dr. Scalzo's office until April 2017. (**Id.**)

The court "heard the testimony and evidence firsthand as did the jury," and it "determined that the jury could have reasonably found that [Appellant] experienced no compensable pain and suffering." (Trial Court Opinion at 6). In particular, the evidence demonstrated that Appellant transitioned to a more strenuous job after his accident, and he would go without medical treatment for his foot for extended periods. On this record, the court did not abuse its discretion in denying Appellant's weight claim related to the damage award. **See Adkins, supra**; **Avery, supra**. **See also Davis, supra** at 396-97, 773 A.2d at 770 (explaining trial court had reasonable basis to conclude that jury did not believe plaintiff suffered compensable pain and suffering; plaintiff admitted he did not miss work due to accident, he waited twenty days after accident before visiting doctor, he quit treatment after twenty visits with doctor, and he did not receive subsequent treatments).

In his second issue, Appellant contends he "presented ample evidence concerning [Appellee's] control over the subject lot, premises, and ultimately stairs on each mobile home." (Appellant's Brief at 28). Appellant emphasizes that Appellee developed rules and regulations that each tenant of the mobile home park needed to follow. Appellant argues the rules "are incorporated into and appended to the lease," and they govern topics ranging from mowing

grass to the insulation of pipes and water meters. (*Id.* at 29). Appellant further argues the park's manager testified that Ms. Van Why's use of a makeshift stairway violated these rules. Appellant avers the makeshift stairway was unreasonably dangerous, and Appellee was negligent for allowing this condition to exist on its property. Appellant concludes the jury's decision regarding Appellee's negligence was against the weight of the evidence, and he is entitled to a new trial on this basis. We disagree.

"In trying to recover for an action in negligence, a party must prove four elements." *Lux v. Gerald E. Ort Trucking, Inc.*, 887 A.2d 1281, 1286 (Pa.Super. 2005), *appeal denied*, 587 Pa. 731, 901 A.2d 499 (2006).

> They are:
>
> 1.  A duty or obligation recognized by law.
>
> 2.  A breach of the duty.
>
> 3.  Causal connection between the actor's breach of the duty and the resulting injury.
>
> 4.  Actual loss or damage suffered by complainant.

*Id.* (emphasis omitted).

"The question of duty in tort is 'a legal determination, assigned in the first instance to the trial court....'" *Thierfelder v. Wolfert*, 617 Pa. 295, 317, 52 A.3d 1251, 1264 (2012) (quoting *Sharpe v. St. Luke's Hosp.*, 573 Pa. 90, 96, 821 A.2d 1215, 1219 (2003)).

> As a general rule, a landlord out of possession is not liable for injuries incurred by third parties on the leased premises because the landlord has no duty to such persons. This

general rule is based on the legal view of a lease transaction as the equivalent of a sale of the land for the term of the lease. Thus, liability is premised primarily on possession and control, and not merely [on] ownership.

*    *    *

There are a number of exceptions to the general rule of non-liability of a landlord out of possession, one of which is particularly relevant in the instant case: the landlord may be liable if he or she has reserved control over a defective portion of the leased premises or over a portion of the leased premises which is necessary to the safe use of the property (the "reserved control" exception). The reserved control exception is most clearly applicable to cases involving "common areas" such as shared steps or hallways in buildings leased to multiple tenants. However, the applicability of the exception is not limited to such well-defined "common areas." Our Supreme Court invoked the reserved control exception in a case involving an allegedly defective radiator in one tenant's unit of a building occupied by several commercial tenants, after the landlord-owner of the building was sued for negligence by a tenant who had been seriously burned by steam from the radiator. Importantly, the entire building was served by a central steam-heating system, which was controlled and operated by the landlord.

*Jones v. Levin*, 940 A.2d 451, 454-55 (Pa.Super. 2007) (internal citations and some quotation marks omitted).

Instantly, the court identified relevant portions of testimony demonstrating that Appellee did not reserve control over Ms. Van Why's stairway:

June Kleintop, the property manager of Rustic Acres, testified at trial as the corporate representative for [Appellee]. Ms. Kleintop testified that she and her husband have lived in Rustic Acres and have been co-property managers of the park since 2000. She testified that Ms. Van Why did have a lease agreement, which was admitted as

- 11 -

evidence at trial and was published to the jury. She testified that the tenants of Rustic Acres rent individual lots from [Appellee] but that [Appellee] owns the parcel of land which comprises the individual lots. She testified that each tenant signs a lease agreement which also contains rules and regulations for the park. She testified as to the enforcement mechanisms available to [Appellee] when a tenant commits a violation. Significantly, Ms. Kleintop testified that pursuant to the Rules and Regulations, the tenant is responsible for the maintenance of the property, the sidewalk, the driveway, and keeping the property free and clear of debris.

Furthermore, portions of [Ms.] Van Why's deposition were read aloud at trial. During her deposition, she testified that a set of stairs had been set up with her trailer when she moved into the park. She specifically testified that she moved the steps away and replaced it with a pallet. She testified that she had put the pallet in question in place of the stairs and placed a board on top of the pallet in order to create a walking surface.

(Trial Court Opinion at 7).

Here, Ms. Van Why's stairway was not part of a common area or other system controlled or operated by Appellee. *See Jones, supra*. Rather, Ms. Van Why unilaterally modified the stairway for her trailer, which was located on a part of the premises that she needed to maintain. Absent more, the court did not abuse its discretion in denying Appellant's weight claim related to the jury's negligence findings. *See Adkins, supra*.

In his third issue, Appellant claims the trial court should have permitted him to introduce evidence concerning Appellee's insurance policy for the mobile home park. Appellant maintains Appellee "opened the door" to this evidence, because it contested the level of control it exerted over the property.

(Appellant's Brief at 33). Additionally, Appellant argues the court should have permitted him to introduce evidence concerning violations of the park's rules and regulations that occurred after his own accident. Appellant insists such evidence "would have provided further proof to the jury that Appellee … not only controlled the subject property, but did not sufficiently utilize its enforcement remedies in order to ensure the safety of the entire premises for invitees." (*Id.* at 36). Appellant concludes the court abused its discretion by excluding the evidence in question. We disagree.

The following principles apply to this Court's review of a challenge to the admissibility of evidence:

> Admission of evidence is within the sound discretion of the trial court and a trial court's rulings on the admission of evidence will not be overturned absent an abuse of discretion or misapplication of law. To constitute reversible error, a ruling on evidence must be shown not only to have been erroneous but harmful to the party complaining.

> Admissibility depends on relevance and probative value. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact.

> Evidence, even if relevant, may be excluded if its probative value is outweighed by the potential prejudice.

> Unfair prejudice supporting exclusion of relevant evidence means a tendency to suggest decision on an improper basis or divert the jury's attention away from its duty of weighing the evidence impartially. The function of the trial court is to balance the alleged prejudicial effect of the evidence against its probative value and it is not for an appellate court to usurp that function.

*Carlini v. Glenn O. Hawbaker, Inc.*, 219 A.3d 629, 639 (Pa.Super. 2019) (internal citations and quotation marks omitted).

"Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully." Pa.R.E. 411. "But the court **may** admit this evidence for another purpose, such as proving a witness's bias or prejudice or proving agency, ownership, or control." *Id.* (emphasis added).

Instantly, the court determined that evidence regarding Appellee's liability insurance "was unnecessary and that any potentially probative value would be significantly outweighed by the risk of misleading or confusing the jury and/or unfair prejudice to [Appellee]." (Trial Court Opinion at 9). Further, the court admitted other evidence, including Ms. Van Why's lease and the mobile home park's rules and regulations, to enable the jury to determine the amount of control Appellee exercised over Ms. Van Why's property. (**See** Ms. Van Why's Exhibit 2, dated 7/22/16; Appellant's Trial Exhibit 16, dated 2/10/20).[3] Thus, the court did not abuse its discretion by failing to admit evidence of Appellee's insurance policy. **See Carlini, supra**; Pa.R.E. 411. **See also Price v. Yellow Cab Co. of Philadelphia**, 443 Pa. 56, 64, 278 A.2d 161, 166 (1971) (recognizing assumption that "knowledge of the fact of

_____

[3] Ms. Van Why's lease, which included the park's rules and regulations, was first introduced at Ms. Van Why's deposition on July 22, 2016. (**See** N.T. Deposition of Ms. Van Why, 7/22/16, at 64). Appellant also introduced an identical copy of the lease at trial.

insurance against liability will motivate the jury to be reckless in awarding damages to be paid, not by the defendant, but by a supposedly well-pursed and heartless insurance company that has already been paid for taking the risk").

The court also considered the admissibility of evidence concerning violations of the park's rules that occurred after Appellant's accident. The court noted that "post-incident photographs were taken in March of 2015," and "[t]he pictures in no way accurately reflect the scene at the time of the incident." (Trial Court Opinion at 10-11). Likewise, the court determined that other evidence of violations that occurred in 2015 and 2016 "was not relevant to the issue of the amount of control that [Appellee] may have had over the property at the time of the incident." (*Id.* at 11). Here, the court correctly determined that the evidence at issue did not tend to establish a material fact in the case, and its evidentiary ruling did not amount to an abuse of discretion. *See Carlini, supra*. Accordingly, we affirm.

Judgment affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 11/18/2020*

- 15 -