PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2409
_____

ADAMS OUTDOOR ADVERTISING
LIMITED PARTNERSHIP,
a Limited Partnership Organized Under the Laws
of the State of Minnesota,
by its Managing General Partner, Adams Outdoor GP, LLC,

Appellant

v.

PENNSYLVANIA DEPARTMENT OF
TRANSPORTATION;
LESLIE RICHARDS, Individually and in her capacity
as Secretary of Transportation,
Acting as the Chief Executive Officer of the Pennsylvania
Department of Transportation

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 5-17-cv-01253)
District Judge: Honorable Joseph F. Leeson

_____

Argued March 5, 2019

Before: SMITH, Chief Judge, AMBRO,
and RESTREPO, Circuit Judges

(Opinion filed: July 15, 2019)

Victor F. Cavacini (Argued)
Gross McGinley
33 South 7th Street
P.O. Box 4060
Allentown, PA  18105

    Counsel for Appellant

Josh Shapiro
   Attorney General
Claudia M. Tesoro (Argued)
   Senior Deputy Attorney General
J. Bart DeLone
   Chief Deputy Attorney General
Office of Attorney General
1600 Arch Street, Suite 300
Philadelphia, PA  19103

    Counsel for Appellee

——————————

OPINION  OF  THE  COURT

——————————

AMBRO, Circuit Judge

Adams Outdoor Advertising, L.P., wants to install a billboard near an interchange on U.S. Route 22 in Hanover Township, Pennsylvania. Adams sought a permit from the Pennsylvania Department of Transportation ("PennDOT"), but it denied the permit under a provision of Pennsylvania law that prohibits "off premise" billboards within 500 feet of a highway interchange. Adams contends that provision—called the "Interchange Prohibition"—violates the First Amendment because it is too vague or, alternatively, because it does not survive First Amendment scrutiny. Adams also claims that PennDOT's permitting requirement for highway billboards separately violates the First Amendment because there is no time limit for its decisions on applications.

The District Court ruled in Adams' favor on the time-limit claim and entered an injunction barring the enforcement of the permit requirement until PennDOT establishes reasonable time limits on its permit decisions. It dismissed, however, Adams' vagueness challenge on the pleadings and entered summary judgment against Adams on its First Amendment scrutiny challenge.

We affirm in part and reverse in part. As to the former, we join the District Court in concluding that PennDOT's permit requirement violates the First Amendment because it lacks a reasonable time limit for permit determinations, and thus sustain the injunction. Further, we affirm the Court's dismissal of Adams' vagueness challenge because the Interchange Prohibition communicates clearly what it prohibits. But we cannot sustain its entry of summary judgment in favor of PennDOT Secretary Richards on Adams' challenge to the scrutiny required to assess the Interchange Prohibition. Although we conclude the Prohibition is not

subject to strict scrutiny, the record is insufficient to establish the required reasoning for the prohibition. We thus reverse on that claim and remand for further proceedings.

## I.       Background

### A.       Statutory Background

The Highway Beautification Act of 1965, 23 U.S.C. § 131, establishes a framework for federal–state agreements governing the size, lighting, and spacing of outdoor advertising signs (colloquially, "billboards") near highways. States that do not enter into and comply with their federal–state agreements under the Beautification Act lose certain funds for highway programs. *See* 23 U.S.C. § 131(b).

Pennsylvania meets its obligations under the Beautification Act through the Pennsylvania Outdoor Advertising Control Act of 1971, 36 Pa. Stat. §§ 2718.101–.115. PennDOT administers the Act through its Secretary, defendant-appellee Leslie Richards. 36 Pa. Stat. § 2718.106.

Two aspects of the Act are relevant in this appeal. First, its Interchange Prohibition bars the installation of any billboard within 500 feet of an "interchange" or "safety rest area" unless the billboard is an "official" or "on premise" sign as defined in 23 U.S.C. § 131(c). *See* 36 Pa. Stat. § 2718.105(c)(2)(i), (iv). Second, the Act sets up a permitting regime requiring persons to obtain permits from either PennDOT or a PennDOT-authorized entity to install billboards regulated by the former. *See* 36 Pa. Stat. § 2718.107. The Act does not establish a time limit to decide permit applications.

4

## B.       Facts and Procedural History

Adams is a company that acquires or leases private land to install and maintain outdoor advertising signs as a medium of communication by the public. It receives the customer's desired message, secures permits, and installs the message on a sign. All the signs Adams installs are "off premise" signs—that is, they communicate a message concerning neither the specific property where the sign is displayed nor the business or activities that occur there. An example of an "off premise" sign would be one advertising a law firm, a political campaign, or any other business or organization that does not operate on the location where the sign is installed.

In March 2016 Adams applied to PennDOT for a permit to install a billboard alongside U.S. Route 22 in Hanover Township. The application remained pending for more than a year. During that time Adams filed this lawsuit, which prompted PennDOT to act. It denied the application because the billboard's proposed location was less than 500 feet from a highway interchange in violation of the Interchange Prohibition.

Adams named both Secretary Richards and PennDOT as defendants, but PennDOT was dismissed early in the proceedings. Adams does not challenge that dismissal on appeal. The Complaint alleges six claims under the First Amendment, three of which are relevant here: the Interchange Prohibition violates the First Amendment because (1) it is too vague, (2) it is a content-based regulation that on its face cannot survive the scrutiny called for by the Amendment, and (3) its permitting requirement does not impose a time limit on PennDOT to rule on applications.

The District Court dismissed the vagueness challenge on the pleadings. *Adams Outdoor Advert. Ltd. P'ship v. Pa.*

5

*Dep't of Transp.*, 307 F. Supp. 3d 380, 390–93 (E.D. Pa. 2018). It also denied the motion to reconsider that dismissal. *Adams Outdoor Advert. Ltd. P'ship v. Pa. Dep't of Transp.*, 321 F. Supp. 3d 526, 534–35 (E.D. Pa. 2018). The other two claims went through discovery. The Court then granted summary judgment for Secretary Richards on the First Amendment scrutiny challenge to the Interchange Prohibition. *Id.* at 535–39. But it granted summary judgment for Adams on the permit challenge and issued an injunction prohibiting PennDOT from enforcing the Act's permitting requirement until it issues rules establishing time constraints for its decisions on applications. *Id.* at 541–45.

On appeal, Adams challenges the District Court's resolution on all three of these claims. Although Adams won summary judgment on the last issue, it contends the proper relief is an injunction compelling the Pennsylvania General Assembly to amend the Act. Secretary Richards contends the District Court should not have entered an injunction at all, though she did not appeal the District Court's decision granting it and acknowledged at oral argument that she is not challenging it.

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291 and review *de novo* its orders granting summary judgment and granting Secretary Richards' motion to dismiss for failure to state a claim. *Dwyer v. Cappell*, 762 F.3d 275, 279 (3d Cir. 2014); *Vorchheimer v. Phila. Owners Ass'n*, 903 F.3d 100, 105 (3d Cir. 2018). We review the District Court's "fashioning of

6

a remedy according to an abuse of discretion standard." *Anderson v. Davila*, 125 F.3d 148, 159 (3d Cir. 1997).

### III.    Discussion

#### A.    Vagueness Challenge

Our Supreme Court has identified two grounds on which to hold a statute impermissibly vague. "First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). "Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Id.*

We join the District Court in concluding that Adams failed to allege either form of vagueness. The Interchange Prohibition clearly conveys what it prohibits. It bans the installation of billboards within 500 feet of either side of an interchange on a divided highway, other than "official" or "on premise" billboards, as defined by federal law. Official signs are "[d]irectional or other official signs or notices erected and maintained by public officers or agencies . . . for the purpose of carrying out an official duty or responsibility." 23 C.F.R. § 750.105(a) (incorporated into the Interchange Prohibition by reference, *see* 36 Pa. Stat. § 2718.105(c)(2)(iv), 23 U.S.C. § 131(c)). On-premise signs are those that "advertise the sale or lease of, or activities being conducted upon, the real property where the signs are located." 23 C.F.R. § 750.105(a) (incorporated into the Interchange Prohibition by reference, *see* 36 Pa. Stat. § 2718.105(c)(2)(iv), 23 U.S.C. § 131(c)). The Prohibition is clear enough that a person of ordinary intelligence would "understand what conduct it prohibits." *Hill*, 530 U.S. at 732. The provision also does not give PennDOT authorization to enforce arbitrarily or in a discriminatory way. When construing the provision, its

discretion is cabined by explicit distance measurements, and Adams does not allege any facts suggesting PennDOT applies those metrics in an arbitrary or discriminatory manner.

Adams instead complains that PennDOT's interpretation of its 500-foot radius has changed a few times since the provision's enactment in 1971. At times between 1971 and 1997, PennDOT construed the provision's 500-foot radius to extend from highway interchanges on only one side of a divided highway. That position altered in 1997, when PennDOT issued a guidance letter (the "1997 Strike-Off Letter") establishing its position—held continuously since then—that the Interchange Prohibition applies to both sides of a divided highway.

Adams asserts the changes in PennDOT's interpretation prove the Interchange Prohibition is unconstitutionally vague. We disagree. Although the provision is broad enough to permit more than one agency interpretation, that does not mean it is unconstitutionally vague. That is so because in evaluating a vagueness challenge to a state law, "a federal court must, of course, consider any limiting construction that a state court or enforcement agency has proffered." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 n.5 (1982). In other words, we can consider the 1997 Strike-Off Letter when evaluating the vagueness challenge of Adams, and that letter cures the supposed vagueness it asserts.

Accordingly, we affirm dismissal on the pleadings of Adams' vagueness claim.

**B. Scrutiny Challenge to Interchange Prohibition**

Adams also contends the Interchange Prohibition is a content-based restraint of speech that is subject to, and does not

8

satisfy, strict scrutiny—that is, the requirement that a law must further a compelling government interest by the least restrictive means. *See Free Speech Coal., Inc. v. Attorney General*, 825 F.3d 149, 164 (3d Cir. 2016).

Before reaching the merits of this claim, we address a question raised by the District Court:  whether Adams has standing to challenge the Interchange Prohibition's exemption of official and on-premise signs even though it does not wish to install either of those sign types.  Standing requires (1) an "injury in fact" that is (2) "fairly traceable to the challenged action of the defendant" and (3) capable of a court remedy. *Id.* at 165 (internal quotation marks and citation omitted).

We conclude Adams has standing.  Its liberty to speak is restrained by PennDOT's enforcement of the Interchange Prohibition, and an order invalidating that provision would restore that liberty.  It does not matter, for purposes of our standing analysis, that Adams challenges the Prohibition by pointing to exemptions for which it does not qualify.  Challengers of outdoor advertising restraints often point to exemptions enjoyed by others when seeking to challenge a restraint as contrary to the First Amendment. *See, e.g.*, *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2230 (2015); *Riel v. City of Bradford*, 485 F.3d 736, 748–54 (3d Cir. 2007).  That approach is proper here.

As to the merits, we begin by determining what level of First Amendment scrutiny to apply to the Prohibition.  Adams contends it is subject to strict scrutiny because it exempts "official" and "on premise" signs.

We deal first with the exemption for official signs.  As noted, they are "[d]irectional or other official signs or notices erected and maintained by public officers or agencies . . . for the purpose of carrying out an official duty or responsibility."

9

23 C.F.R. § 750.105(a). These are forms of government speech, and an exemption for them does not trigger strict scrutiny. *See Pleasant Grove City v. Summum*, 555 U.S. 460, 467–68 (2009); *accord Town of Gilbert*, 135 S. Ct. at 2233 (Alito, J., concurring). Adams does not meaningfully dispute this point.

The exemption for on-premise signs is a closer call. As noted, they "advertise the sale or lease of, or activities being conducted upon, the real property where the signs are located." 23 C.F.R. § 750.105(a). An example is a sign advertising a restaurant that is installed on the property where the restaurant is located. The leading decision by our Court in this area is *Rappa v. New Castle County*, 18 F.3d 1043 (3d Cir. 1994). There we set out a framework for reviewing the constitutionality of outdoor advertising regulations that provide exemptions for signs that convey messages with a "significant relationship" to the property where they are located. *Id.* at 1065–66. We drew a distinction between two kinds of on-premise signs: (1) those that advertise the "activities conducted on the premises," and (2) those that advertise "the sale or lease of the real property on which they are located." *Id.* at 1066–67 & n.42.[1] For both, Secretary

---

[1] Adams presses us to deviate from *Rappa* and apply strict scrutiny under *Town of Gilbert*, 135 S. Ct. at 2230–31. We decline. That case did not address an exemption for on-premise signs, and the concurring opinions by Justices Alito and Kagan, which received a total of six votes, both indicated that on-premise sign regulations are content neutral and expressed that strict scrutiny would *not* apply to outdoor advertising regulations merely because they provide an exemption for on-premise signs. *See id.* at 2233 (Alito, J., concurring) (stating that "[r]ules distinguishing between on-premises and off-premises signs" would not trigger strict

10

Richards bears the burden to prove the exemptions survive the applicable First Amendment scrutiny.

### 1. Exemption for on-premise "for sale or lease" signs

An exemption for on-premise "for sale or lease" signs is subject to a special "context-specific" scrutiny we crafted in *Rappa*—the exemption must be "substantially related to advancing an important state interest that is at least as important as the interests advanced by the [overall prohibition], . . . no broader than necessary to advance the special goal, and . . . narrowly drawn so as to impinge as little as possible on the overall goal."  18 F.3d at 1065.

Secretary Richards has not carried her burden to show the Interchange Prohibition's exemption for on-premise "for sale or lease" signs meets this context-specific test.  She does not present evidence of the specific government interests at stake, nor does she show, as she must, that the government's interest in providing an exemption for on-premise "for sale or lease" signs is "at least as important as" that served by the Prohibition itself.  *Id.* at 1065–67.  She also does not present evidence concerning the narrow tailoring of that exemption.  In

scrutiny); *id.* at 2236–37 (Kagan, J., concurring in the judgment) (finding it "challenging to understand why" strict scrutiny would apply to sign regulations that do not suggest government censorship or viewpoint discrimination).  In addition, because of its splintered reasoning, *Town of Gilbert* did not establish a legal standard by which to evaluate laws that distinguish between on-premise and off-premise signs.  We thus fall back to our precedent in *Rappa* for reviewing sign regulations exempting on-premise signs.  *See United States v. Tann*, 577 F.3d 533, 541 (3d Cir. 2009).

11

short, she has not carried her burden to justify the Prohibition's exemption for on-premise "for sale or lease" signs.

### 2. Exemption for on-premise signs concerning activities on the property

Under *Rappa*, an exemption for on-premise signs concerning activities on the property is subject to intermediate scrutiny, *see* 18 F.3d at 1067 & n.42—that is, it must be "narrowly tailored to serve a significant governmental interest, and . . . leave open ample alternative channels for communication of the information." *Id.* at 1075 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (quoting *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984))).

Secretary Richards has not carried her burden to justify the Prohibition's exemption for signs concerning activities on the property. Indeed, the record does not satisfy any of the prongs of intermediate scrutiny: it does not contain evidence of the specific government interests furthered, nor evidence of narrow tailoring, nor evidence that "ample alternative channels for communication" are left open.

In sum, the lack of record evidence prevents us from affirming the District Court's entry of summary judgment against Adams on its challenge to the Interchange Prohibition based on First Amendment scrutiny. Accordingly, we reverse that portion of the District Court's ruling and remand for the parties to litigate further Secretary Richards' justification for the restraint and its exemptions.

## C. The Injunction

Finally, we review the District Court's entry of an injunction prohibiting Secretary Richards from enforcing the Act's permit requirement until PennDOT establishes time limits on its permit decisions.

The Act's permit regime is a prior restraint on speech. *Riel*, 485 F.3d at 756. As such, it "presents peculiar dangers to constitutionally protected speech." *Freedman v. Maryland*, 380 U.S. 51, 57 (1965) (discussing the dangers of prior restraint in the context of motion-picture censorship). To address those dangers, the First Amendment requires "strict administrative time limits" on permit decisions and "the possibility of prompt judicial review" of permit denials. *City of Littleton v. ZJ Gifts D-4, LLC*, 541 U.S. 774, 779 (2004) (construing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 220–21, 228, 239 (1990)).[2] These requirements diminish the risk of arbitrarily or "indefinitely suppressing permissible speech." *Riel*, 485 F.3d at 756 (quoting *FW/PBS*, 493 U.S. at 227).

There is no bright-line rule as to what a "strict administrative time limit" is in this context, yet we easily conclude the Act does not satisfy it in this case. For the Act contains no time limit at all, and neither do the regulations implementing it. In practice this has caused permit applications to remain pending for prolonged periods of time—sometimes more than a year, as occurred to Adams' application here. We thus agree with our District Court colleague's decision to enjoin Secretary Richards from enforcing the Act's

---

[2] Additional procedural safeguards apply to permitting regimes that involve content-based determinations. *See Thomas v. Chicago Park Dist.*, 534 U.S. 316, 322–23 (2002).

13

permit requirement until there is set a time limit that satisfies the First Amendment.[3]

\*     \*     \*     \*     \*

The Interchange Prohibition conveys clearly what it prohibits, so we affirm the District Court's dismissal of Adams' vagueness challenge. We also affirm the entry of an injunction barring enforcement of the permitting requirements under 36 Pa. Stat. § 2718.107 until PennDOT establishes reasonable time limits for its permit decisions, as required by the First Amendment. But we reverse and remand on Adams' challenge to the Interchange Prohibition based on First Amendment scrutiny. Although that provision is not subject to strict scrutiny—but rather "context-specific" scrutiny under *Rappa* for on-premise "for sale or lease" signs and intermediate scrutiny for on-premise signs as to activities on the property— Secretary Richards bears the burden to justify the restraint it imposes and the exemptions it provides. She has not done so on the current record. On remand she will have that chance.

---

[3] On appeal Adams argued that the District Court did not go far enough in the injunctive remedy it granted, as it should have ordered the Pennsylvania General Assembly to amend the statute to add a time limit. Given that neither we nor the District Court has the power to grant that relief, *see Murphy v. NCAA*, 138 S. Ct. 1461, 1481–82 (2018), we reject Adams' request and sustain the remedy crafted by the District Court. In addition, the Court did not abuse its discretion just because it did not award the relief that Adams thinks "should" have been granted. Adams does not offer any reason why the injunction was insufficient to remedy § 2718.107's unconstitutionality, and we see none.