IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Weis Market, Inc.,                              :
                                                :
                          Petitioner            :
                                                :
            v.                                   :  No. 215 C.D. 2020
                                                :  Argued:  April 15, 2021
Pennsylvania Department of                       :
Transportation Engineering                       :
District 5,                                       :
                                                :
                          Respondent            :


BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                 FILED:  July 14, 2021


            Weis Market, Inc. (Weis) petitions for review of an order of the
Executive Deputy Secretary of the Pennsylvania Department of Transportation
(PennDOT) denying Weis's exceptions to a proposed report and ordering Weis to
remove an illegal abandoned sign from its property.  Weis argues that PennDOT's
action of assisting Weis in repairing the sign at issue defeated the presumption of
abandonment.  Discerning no error, we affirm.


                              **I. Background**

            Weis is the lessee of real property and operates a gasoline-filling station
located along State Route 22 (Route 22) at the Cedar Crest Boulevard interchange

in South Whitehall Township, Lehigh County, Pennsylvania (Property), which is zoned residential.  In conjunction with this gasoline-filling station, Weis maintains an outdoor advertising device (OAD) on the Property (Sign), which is 15 feet from the nearest edge of the right-of-way along Route 22 and visible to traffic on Route 22.

Route 22 is an interstate highway subject to The Outdoor Advertising Control Act of 1971 (Act).[1]  The Act regulates the placement of OADs along intrastate and interstate highways in Pennsylvania.  PennDOT administers the Act.

Weis acquired the Property in 2014.  Prior thereto, between May 2012 and July 2014, the Sign had no "face" (advertising) and was obstructed by vegetation.  Reproduced Record (R.R.) at 29a-30a, 73a-79a, 112a.  Weis hired an independent contractor to repair the Sign.  Because the Sign is located at the bottom of a steep embankment and is difficult to access from the Property, Weis solicited help from PennDOT.  PennDOT authorized the closure of a traffic lane on Route 22 to allow Weis to access the Sign for the express purpose of repairing it.

During the repair, a neighbor complained about PennDOT assisting Weis with the repair, alleging that Weis bribed PennDOT.  The Office of Inspector General investigated the neighbor's claim and found that PennDOT's assistance in replacing the Sign went against protocol, but that no laws were broken.  However, the neighbor's complaint triggered a PennDOT investigation into the legality of the Sign.

After Weis repaired the Sign, PennDOT, through its Engineering District 5, issued an informal notice to Weis on the basis that the Sign was illegal or

---

[1] Act of December 15, 1971, P.L. 596, *as amended*, 36 P.S. §§2718.101-2718.115.

abandoned and requested Weis to remove it.  On November 16, 2016, PennDOT issued a final notice to remove the Sign.  R.R. at 3a.  The final notice provided:

> You are maintaining an [OAD] without a valid permit as required by [the Act] and supporting regulation[.] [Section 7 of the Act,] 36 P.S. §2718.107; 67 Pa. Code §445.6(a).  Because a valid permit was not obtained[,] the device is deemed abandoned in accordance with 67 Pa. Code §445.8(b)(3).  [A]bandoned [OADs] must be removed by the sign owner and/or the property owner. [Section 10 of the Act, 36 P.S. §2718.110]; 67 Pa. Code §445.8(c).

R.R. at 3a.

Weis appealed and an evidentiary hearing was held before a PennDOT Hearing Officer in March 2017.  On November 16, 2019, almost three years later,[2] the Hearing Officer issued a proposed report, affirming the final notice.  The Hearing Officer found that the Sign was abandoned under 67 Pa. Code §445.8(b)(1) because it did not have bona fide advertising for 12 months and was in a state of disrepair from May 2012 through July 2014.  The Hearing Officer further found that the Sign was illegal because Weis did not have a permit and did not meet the criteria for a permit as either an off-premise, on-premise or nonconforming sign under the Act.

From this decision, Weis filed exceptions to the proposed report on the basis that the Sign is a preexisting nonconforming sign that does not require a permit and that PennDOT rebutted the presumption of abandonment by assisting with its repair.  R.R. at 223a-24a.  PennDOT's Executive Deputy Secretary denied the exceptions and finalized the proposed report.  Weis now seeks review of this final adjudication.

---

[2] Although Weis takes issue with the long delay, Weis actually benefited from the delay because it was able to maintain its Sign during this period.

3

## II. Issue

On appeal,[3] Weis argues that PennDOT's action of assisting Weis to repair the Sign by authorizing a traffic lane closure defeated the presumption of abandonment.

## III. Discussion

Weis maintains that the Sign was erected prior to the adoption of the Act in 1971, and it has continuously existed as a lawfully erected nonconforming sign without a permit for over 50 years. Weis concedes that the Sign is not eligible for a permit because it does not meet the conforming requirements of the Act. However, Weis argues that it does not require a permit because it is a lawful preexisting nonconforming sign. Weis contends that the Sign has never been abandoned. The Act merely creates a presumption of abandonment, but the presumption is not irrebuttable. PennDOT's proposed report found that the Sign was in a state of disrepair from May 2012 through July 2014, but the Sign never lost its structural integrity. Only the face of the Sign was damaged, and it was replaced with PennDOT's assistance. Weis contends that PennDOT defeated the presumption of abandonment by willfully assisting Weis in the repair of the Sign. The record is devoid of evidence that the presence of the Sign has affected the public health, safety or welfare. Weis adds that the Sign alerts motorists along Route 22 of fueling options and that the removal of the Sign would be a disservice to them.

The Act controls the placement of OADs in areas adjacent to the interstate and main highways within the Commonwealth. Sections 2 and 4 of the

---

[3] Our review is limited to a determination of whether constitutional rights have been violated, whether an error of law exists, or whether any findings of fact made by PennDOT and necessary to support its adjudication are not supported by substantial evidence. *Keystone Outdoor Advertising v. Department of Transportation*, 687 A.2d 47, 48 (Pa. Cmwlth. 1996).

Act, 36 P.S. §§2718.102, 2718.104. The purpose of the Act is "to protect the Commonwealth's interest in receiving federal-aid funds, and, at the same time, to further the national policy of highway beautification. Its goal [is] to limit the proliferation of advertising signs alongside our highways." *Patrick Media Group, Inc. v. Department of Transportation*, 620 A.2d 1125, 1128 (Pa. 1993) (citing Section 2 of the Act, 36 P.S. §2718.102 (outlining the purposes of the Act)). The Act is administered by PennDOT, which has adopted implementing regulations. Section 6 of the Act, 36 P.S. §2718.106; *see generally* 67 Pa. Code §§445.1-445.9 (PennDOT's regulations).

The Act generally prohibits the erection of signs that are within 660 feet of the nearest edge of the right-of-way and visible from the main-traveled way of an interstate or primary highway. 36 P.S. §2718.104. The Act contains nine exceptions to this general prohibition, including the following relevant exceptions:

> (iii) Outdoor advertising devices advertising activities conducted on the property on which they are located.
>
> (iv) Outdoor advertising devices in zoned or unzoned commercial or industrial areas along those portions of the interstate system constructed on right-of-way, any part of the width of which was acquired on or before July 1, 1956.
>
> (v) Outdoor advertising devices in areas zoned commercial or industrial along the interstate system and lying within the boundaries of any incorporated municipality as such boundaries existed on September 21, 1959, and devices located in any other area which, as of September 21, 1959, was clearly established by law as industrial or commercial.

36 P.S. §2718.104(iii)-(v).[4]

Outdoor advertising conducted on the property upon which the signs are located under Section 4(iii) of the Act, 36 P.S. §2718.104(iii), is commonly referred to as "on-premise" signs; whereas outdoor advertising conducted in zoned or unzoned commercial or industrial areas along the interstate under Section 4(iv) and (v) of the Act, 36 P.S. §2718.104(iv) and (v), are commonly referred to as "off-premise" signs. *See* 67 Pa. Code §445.2 (defining "premises"). Under the Act and the regulations, an annual permit is required for both on-premise and off-premise signs. Section 7 of the Act, 36 P.S. §2718.107;[5] 67 Pa. Code §445.6(a)(2), (3).

An annual permit is also required for "[s]igns prohibited to be erected or maintained under [S]ection 4 of the Act (36 P.S. §2718.104), until such time as each sign has been removed . . . ." 67 Pa. Code §445.6(a)(4). These signs are commonly referred to as "nonconforming" signs, meaning "[a] sign which was

[4] The other exceptions are inapplicable as they pertain to official signs and OADs advertising the sale or lease of real property, located along the primary system, providing public information or directions, or otherwise permitted by official agreement. *See* 36 P.S. §2718.104(i)-(ii), (vi)-(ix).

[5] In *Adams Outdoor Advertising Limited Partnership by Adams Outdoor GP, LLC v. Pennsylvania Department of Transportation*, 930 F.3d 199, 208 (3d Cir. 2019), the Third Circuit Court of Appeals enjoined the enforcement of the Act's permit requirements until there is a set time limit that satisfies the First Amendment, U.S. Const. amend. I. The Court explained that neither the Act nor the regulations implementing it contain any time limit and, in practice, permit applications remained pending for prolonged periods of time, sometimes more than a year. *Adams Outdoor*, 930 F.3d at 208. Neither the General Assembly nor PennDOT has fashioned a remedy to cure the unconstitutional deficiency.

Neither party addresses application of *Adams Outdoor* to the case here. Although we are not bound by the decisions of the federal circuit courts, we may cite them for persuasive value. *Desher v. Southeastern Pennsylvania Transportation Authority*, 212 A.3d 1179, 1186 n.7 (Pa. Cmwlth. 2019). However, considering that Weis never applied for a permit, the failure to obtain a permit for the Sign was not because of the time-limit deficiencies within PennDOT's permitting program. Therefore, *Adams Outdoor*'s injunction of the enforcement of Section 7's permitting process is of little value here.

legally erected [prior to the Act] but which does not conform with the requirements of the [A]ct." 67 Pa. Code §445.2.

Pursuant to the regulation governing abandonment, the following signs are presumed abandoned:

> (1) *A sign which has remained without bona fide advertising for 12 months or which has been without a current lease or license from the landowner for more than 90 days.*
>
> (2) A sign other than a nonconforming sign which requires maintenance or repair in excess of 25% of the replacement cost of the sign. Determination of the replacement cost of the sign and of the amount of required maintenance or repair shall be made by [PennDOT] after consultation with the sign owner.
>
> (3) *A sign for which a valid tag permit under § 445.6(b) and (c) (relating to permits) was not issued.*
>
> (4) A sign considered abandoned under §445.7(b) (relating to restoration of damaged or partially destroyed nonconforming signs).
>
> (5) A nonconforming sign, otherwise compensable under [S]ection 9 of the [A]ct (36 P.S. §2718.109), which since the date on which the sign became eligible for compensation, has been enlarged, illuminated or structurally improved in any manner (except normal repairs) or the location of which has been changed.
>
> (6) A sign, the permit for which has been revoked under the act or its amendments or this chapter.

67 Pa. Code §445.8(b) (emphasis added). Abandoned signs must be removed within 30 days' notice from PennDOT. Section 10 of the Act, 36 P.S. §2718.110; 67 Pa. Code §445.8(c). PennDOT's regulations authorizing the removal of abandoned

7

signs are consistent with the purposes of the Act and are well within its rulemaking authority. *Park Outdoor Advertising Co. v. Department of Transportation*, 485 A.2d 864, 866 (Pa. Cmwlth. 1984). PennDOT's "interpretation of its own regulations is controlling unless plainly erroneous or inconsistent with the statute under which it was promulgated." *Media v. Department of Transportation*, 641 A.2d 630, 632 (Pa. Cmwlth. 1994).

The abandonment regulation creates a presumption of abandonment, but it is not dispositive of an OAD's status. *Joyce Outdoor Advertising, LLC v. Department of Transportation*, 49 A.3d 518, 525 (Pa. Cmwlth. 2011). The presumption of abandonment may be rebutted by actions or statements. *Id.* For example, in *Joyce Outdoor Advertising*, PennDOT sent the OAD owner a notice of abandonment under 67 Pa. Code §445.8(b)(1), on the basis that the OAD lacked advertising for at least 12 months. The owner timely responded that it intended to repair the OAD. The owner later informed PennDOT that it had a valued client for the location and had provided that client with an alternative OAD at no charge until the OAD at issue could be replaced. The owner also advised PennDOT that the economic downturn impacted the timing of the OAD's replacement. The application of the presumption was problematic because PennDOT knew of the intent to repair the OAD. The owner confirmed its interest and investment in the sign site and expressed its intent to repair the sign, thereby successfully rebutting the presumption. *Joyce Outdoor Advertising*.

Here, the Sign is located within 660 feet of, and is visible from, Route 22, which is a controlled highway. Whether a sign is on-premise, off-premise, or nonconforming, an annual permit is required under the Act and regulations. Section 7 of the Act, 36 P.S. §2718.107; 67 Pa. Code §445.6(a). PennDOT notified Weis

8

that: Weis was operating the Sign without a valid permit as required by Section 7 of the Act and 67 Pa. Code §445.6(a); the Sign was presumed to be abandoned pursuant to 67 Pa. Code §445.8(b)(3); and the Sign needed to be removed pursuant to Section 10 of the Act, 36 P.S. §2718.110 and 67 Pa. Code §445.8(c). R.R. at 3a. Neither Weis nor the previous owners of the Sign ever applied for a permit under the Act. Consequently, a permit was never issued. Under the regulations, a presumption of abandonment was created. 67 Pa. Code §445.8(b)(3).

Weis does not dispute that it never applied for or obtained a permit for the Sign. Weis also recognizes that the Sign does not conform to the on-premise and off-premise exceptions of the Act, 36 P.S. §2718.104(iii)-(v), and, therefore, was not eligible for a permit. The requirements for an on-premise sign permit were not met because the Sign is not within 100 feet of the business activity as required by 67 Pa. Code §§445.2 and 445.5. The requirements for an off-premise sign were not met because the Sign is located within 500 feet of an interchange as prohibited by 67 Pa. Code §445.4(b)(2) and it is not in an area zoned commercial or industrial as required by 67 Pa. Code §445.4(a).

However, Weis argues that the Sign is a preexisting nonconforming sign and, as such, it does not require a permit. Weis's argument fails for two reasons. First, Weis did not establish that the Sign was lawfully erected prior to the Act. In this regard, Weis presented the testimony of Timothy Snyder, Weis's Senior Manager of Architecture, who testified that the Property has been continuously used as some type of fuel service station since 1967. R.R. at 111a. He further testified that the Sign has been present for the entire time. R.R. at 111a-12a. The basis of the witness's understanding was a 1983 zoning hearing board decision (Variance)

9

regarding a prior owner's variance request. R.R. at 118a-19a, 202a-206a. The Hearing Officer inquired further:

> HEARING OFFICER: There's a reference in [the Variance,] Finding of Fact Number Three[,] that says the motor vehicle service station existing on the [P]roperty was erected in 1967 when the [P]roperty was [zoned] commercially. Is that the basis of your understanding, that this was a gas station before the Act?
>
> THE WITNESS: Yes.
>
> HEARING OFFICER: Do you have any other knowledge that would support that understanding other than this [V]ariance?
>
> THE WITNESS: No, just the [V]ariance from the township – township file that was given to me.

R.R. at 118a-19a. The Variance states that the applicant intended "to continue to maintain the existing one hundred fifty-six square foot freestanding high-rise sign that is located near the western border of the [P]roperty adjacent to Route 22." R.R. at 203a. However, there is no mention regarding when the Sign was erected. Although the Variance supports a finding that a gasoline-filling station was erected in 1967 and preexisted the Act, it does not necessarily support a finding that the Sign was erected at the same time. Weis offered no other evidence in support. Consequently, Weis did not offer sufficient evidence to support its claim that its Sign is a preexisting nonconformity.

Second, even assuming that the Sign predates the Act and constitutes a preexisting nonconforming sign, Weis did not obtain a nonconforming permit as required under the regulations. 67 Pa. Code §445.6(a)(4); *see* 67 Pa. Code §445.6(b)(2)(ii) ("If the sign is an existing sign, the affidavit shall contain the date of erection of the sign or a statement that the sign was erected on or before October

10

22, 1965."). Weis's argument that an annual permit was not required is also contrary to common precepts regarding nonconformities in land use contexts. *See Baer v. Zoning Hearing Board of Quincy Township*, 782 A.2d 597, 600-01 (Pa. Cmwlth. 2001) (a landowner's right to the continuation and natural expansion of his preexisting nonconforming business was still subject to licensing and reasonable regulation); *Commonwealth v. Huffman*, 608 A.2d 1118, 1121 (Pa. Cmwlth. 1992) ("The non-conforming use doctrine is invoked to allow the existence of a use prohibited by a later enacted zoning ordinance. . . . This principle, however, has no application to a business licensing ordinance regulating licensee's conduct of his ongoing business."); *see also Joyce Outdoor Advertising*, 49 A.3d at 525 (analyzing the interpretation of abandoned sign presumption under the Act as consistent with the law on abandonment of nonconforming uses in the land use context). Furthermore, the record evidence shows that the Sign lost its nonconforming status when it was not used for advertising for a period of more than 12 months, from May 2012 until July 2014. Therefore, Weis did not rebut the presumption of abandonment.

Notwithstanding, Weis argues that PennDOT's actions defeated the presumption of abandonment by assisting Weis with the repair of the Sign by closing a traffic lane of Route 22. However, the condition of the Sign and the absence of advertising for a two-year period, although cited by the Hearing Officer as further indicia of abandonment, were not the basis for the notice of abandonment. Rather, Weis's failure to obtain a valid permit for the Sign was the basis for the notice of abandonment. R.R. at 3a. Moreover, PennDOT's assistance with respect to the Sign's repair was limited to a lane closure that was authorized by its traffic control division, not the division that oversees the regulation of OADs. Even if we were to

11

conclude that PennDOT's conduct imputes an agency awareness of Weis's intent to repair the Sign, it does not rebut the presumption of abandonment of the OAD based on Weis's failure to maintain a permit or otherwise negate the statutory and regulatory permitting requirements.

## IV. Conclusion

For these reasons, we conclude that the Executive Deputy Secretary did not err or abuse his discretion by denying Weis's exceptions and ordering the removal of the Sign. Accordingly, we affirm.

_____
MICHAEL H. WOJCIK, Judge

Senior Judge Leadbetter concurs in the result only.

12

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Weis Market, Inc.,               :
:
               Petitioner   :
:
               v.          :  No. 215 C.D. 2020
:
Pennsylvania Department of  :
Transportation Engineering   :
District 5,               :
:
           Respondent :

O R D E R

AND NOW, this 14th day of July, 2021, the order of the Executive Deputy Secretary of the Pennsylvania Department of Transportation, dated January 28, 2020, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge