# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nicole Desher (Guardian ad litem :
of Patrick Devlin), :
     Appellant :
        :
   v.     : No. 1529 C.D. 2018
        : Argued:  June 6, 2019
Southeastern Pennsylvania :
Transportation Authority (SEPTA) :


**BEFORE: HONORABLE P. KEVIN BROBSON, Judge**
     **HONORABLE ANNE E. COVEY, Judge**
     **HONORABLE ELLEN CEISLER, Judge**


**OPINION BY JUDGE BROBSON  FILED:  June 27, 2019**


   Nicole Desher (Appellant), as guardian ad litem of Patrick Devlin (Devlin), appeals two orders of the Court of Common Pleas of Philadelphia County (trial court).  Both orders arise from an action Appellant commenced in the trial court against the Southeastern Pennsylvania Transportation Authority (SEPTA), claiming damages under the statute known as the Federal Employers' Liability Act (FELA).[1] The first order, dated June 18, 2018, granted SEPTA's motion *in limine* to preclude the testimony of Appellant's expert witness.  The second order, dated June 19, 2018, granted SEPTA's renewed motion for summary judgment and dismissed Appellant's case.  For the reasons that follow, we affirm trial court' order granting summary judgment in favor of SEPTA.

---

[1] 45 U.S.C. §§ 51-60.

# I. BACKGROUND

At the time of the events giving rise to this case, SEPTA employed Devlin as a welder and rail maintainer. On the morning of October 20, 2014, two other SEPTA employees—Antonio Gonzalez (Gonzalez) and Lafayette Rhoads (Rhoads)—were working at SEPTA's Courtland Yard when they discovered Devlin slumped over in the cab of his welding truck. He was cyanotic, was not breathing, and had no pulse. Gonzalez called 911 from his cell phone, and the emergency dispatcher instructed the men to lay Devlin on the ground and begin CPR and rescue breathing. The two men removed Devlin from the truck, and Gonzalez immediately began to administer CPR and continued to do so until paramedics reached Devlin at 7:54 a.m.—eight minutes after Gonzalez's 911 call. Within two minutes of their arrival, the paramedics detected ventricular fibrillation in Devlin's heart and delivered a defibrillating shock using their own automated external defibrillator (AED). Although at some point during these events someone retrieved and brought to Devlin's location an AED kept in a building within 100 yards of where Devlin was discovered, no one used that AED to treat Devlin before the paramedics arrived. Devlin survived, but his cardiac arrest interrupted the oxygen supply to his brain, causing an anoxic brain injury. That injury impairs Devlin's cognitive and physical functions and renders him incapable of independent living.

The record in this matter also establishes that beginning in 2007 and continuing to the present, SEPTA has had in force an AED policy as part of its Accident and Illness Prevention Program (AIPP). The AIPP directs the placement of 62 AEDs at various SEPTA facilities and provides for maintenance and inspection of AEDs and ongoing training for five employees per AED. (Reproduced Record (R.R.) at 248a.) SEPTA's assistant general manager of safety testified in another

proceeding that SEPTA's practice has been to provide AED training to at least one employee per shift at each AED location. (*Id.* at 230a-31a, 235a-36a.) A former SEPTA employee involved in the implementation of the AIPP avers that employees on each shift were to be informed of the location of the AED at their facility and of the identities of their co-workers who had been trained in its use. (*Id.* at 252a.)

Appellant filed an action with the trial court, seeking to recover damages for Devlin's injury under the FELA[2] and alleging that SEPTA failed to meet the proper standard of care by failing to implement the AIPP. Appellant argues that SEPTA's fundamental duty under the FELA to provide its employees with a reasonably safe place to work includes a duty to implement safety rules to address foreseeable harm and that the AIPP is such a safety rule. Appellant further alleges that SEPTA breached that duty by failing to train its employees adequately pursuant to the AIPP.

In anticipation of trial, Appellant secured the expert testimony of Franklin A. Darius (Darius) concerning SEPTA's failure of its alleged duty. Darius' testimony was to include, *inter alia*, discussion of a first aid regulation promulgated by the Occupational Safety and Health Administration (OSHA), which provides: "In the absence of an infirmary, clinic, or hospital in near proximity to the workplace which is used for the treatment of all injured employees, a person or persons shall

---

[2] The FELA allows employees of certain common carriers to recover compensation for workplace injuries. Unlike modern systems of workers' compensation, the FELA requires the employee to prove that the employer was negligent. *See Hileman v. Pittsburgh & Lake Erie R.R.*, 685 A.2d 994, 998 n. 1 (Pa. 1996). "If an employee is injured because of an unsafe condition, the employer is liable if its negligence played any part, even the slightest, in producing the employee's injury." *Manson v. Se. Pa. Transp. Auth.*, 767 A.2d 1, 3 (Pa. Cmwlth. 2001) (quoting *Peyton v. St. Louis Sw. Ry.*, 962 F.2d 832, 833 (8th Cir. 1992) (internal quotation marks omitted)). The only elements of negligence implicated by the issues Appellant has raised on appeal are duty and breach of duty.

be adequately trained to render first aid. Adequate first aid supplies shall be readily available." 29 C.F.R. § 1910.151(b). Darius was to testify that this regulation requires, at a minimum, consideration of AEDs, based on a nonbinding OSHA best-practice publication which provides: "[AEDs] should be considered when selecting first-aid supplies and equipment."[3] Darius was to testify that SEPTA failed to implement the AIPP in a manner consistent with the intent of OSHA regulations and also that SEPTA did not fulfil its duty under the FELA.

SEPTA filed a motion *in limine* to prevent Darius from testifying. The trial court heard oral argument regarding that motion (and 37 other pending motions *in limine* in this matter) and ultimately granted the motion on June 18, 2018. In a subsequent Pa. R.A.P. 1925(a) opinion, the trial court explained that it precluded Darius' testimony on the grounds that his testimony would be highly prejudicial to SEPTA and have minimal probative value because the OSHA regulations do not, by their terms, require AEDs.

Appellant also secured evidence concerning SEPTA's implementation of the AIPP. Appellant deposed Rhoads and Gonzalez concerning their experiences with the AIPP prior to Devlin's injury. Rhoads, employed by SEPTA at the Courtland Yard for about 12 years before these events,[4] testified that SEPTA had

---

[3] "Best Practices Guide: Fundamentals of a Workplace First-Aid Program," OSHA 3317-06N at 9 (2006), https://www.osha.gov/Publications/OSHA3317first-aid.pdf (Guide).

[4] SEPTA states that Rhoads and Gonzalez "were not assigned to [the Courtland] Yard," and suggests that they were present for Devlin's cardiac arrest only because they were refueling their work truck at the Courtland Yard. (Br. for Appellee at 39.) That suggestion is obviously inconsistent with the men's deposition testimony as summarized here, which establishes that each had the Courtland Yard as his primary reporting location for many years before these events, though they did drive their work truck to other locations in the course of their duties. (*See* R.R. at 253a-54a, 323a, 325a, 354a.)

4

never informed him of the presence of an AED at the Courtland Yard and that he became aware of it only "after all of it was over." (R.R. at 324a.) Gonzalez, who had worked at the Courtland Yard for six years before these events, testified that he was aware of the presence of an AED at the Courtland Yard, but he added that SEPTA had never informed him of the identities of his co-workers who had been trained in its use and that he did not recall SEPTA definitively communicating the AED's location to him. (*Id.* at 253a-54a.)

Following the trial court's rulings on various pretrial matters, SEPTA made a renewed motion for summary judgment. The trial court granted summary judgment because it concluded that SEPTA's FELA duty did not include "anticipating [Appellant's] heart attack[,] nor did it mandate providing assistance to him in the form of the use of an AED." (Br. for Appellant, trial court op. at 11.) Essentially, the trial court's conclusion rests on two determinations, both set forth in its Rule 1925(a) opinion: (1) the AIPP is not a "safety rule" which SEPTA has a duty to enforce under the FELA (*id.* at 10.); and (2) Appellant "failed to show that [SEPTA] had failed to enforce the language of [the AIPP]."[5] (*Id.*)

## II. ISSUES

On appeal to this Court, Appellant raises three issues: (1) whether the trial court, in granting summary judgment, erred in concluding that SEPTA did not owe a duty to implement the AIPP properly as part of its duty to provide a reasonably

---

[5] The trial court and SEPTA insist that neither SEPTA nor its employees owe an absolute duty to provide defibrillation to an employee suffering cardiac arrest. We need not address this contention because, as Appellant makes clear, "the breach asserted by [Appellant] is of the duty to provide under the FELA a reasonably safe place to work, *by not properly implementing the AIPP*." (Reply Br. for Appellant at 8 (emphasis added); *see also* Br. for Appellant at 12-13 ("The breach of the duty to provide its employees with a reasonably safe place to work *was in the failure to enforce the [AIPP]* by effectively implementing it." (emphasis added)).) Appellant does not allege the breach of some general duty independent of implementing the AIPP.

5

safe workplace under the FELA; (2) whether the trial court, in granting summary judgment, erred in deciding on its own, rather than allowing a jury to decide, whether Appellant showed that SEPTA breached its duty under the FELA by failing to implement the AIPP properly; and (3) whether the trial court erred in granting SEPTA's motion *in limine* to preclude Darius' testimony. SEPTA, in part, responds that Appellant waived these issues on appeal. We first address the question of waiver followed by the issues pertaining to the grant of summary judgment. We address last the issue pertaining to SEPTA's motion *in limine*, because our analysis of SEPTA's duty as set forth in our summary judgment discussion bears on our disposition of whether the trial court erred in granting SEPTA's motion *in limine*.

### III.  DISCUSSION

### A.  Waiver

SEPTA first argues that Appellant has waived all issues on appeal because the language Appellant used to raise those issues in its brief differs from the language it used in its Pa. R.A.P. 1925(b) statement. Specifically, SEPTA maintains that the inclusion of the phrase "safety rule" in Appellant's Brief—a phrase which does not appear in Appellant's Rule 1925(b) statement—raises a novel issue which should not be considered on appeal. Additionally, SEPTA asserts that "[t]he listed issues in [Appellant's Rule] 1925(b) [s]tatement should, furthermore, be found waived due to vagueness." (Br. for Appellee at 18.) SEPTA does not further develop these waiver arguments.

A party's failure to include an issue in its Rule 1925(b) statement waives that issue on appeal. Pa. R.A.P. 1925(b)(4)(vii). Importantly, however, "[e]ach error identified in the [Rule 1925(b) s]tatement will be deemed to include every subsidiary issue which was raised in the trial court." Pa. R.A.P. 1925(b)(4)(v).

6

Here, the issues of duty and breach as related to a "safety rule" are subsidiary to the issue of negligence, which Appellant raised, concisely but clearly, in the Rule 1925(b) statement. Before the trial court, Appellant discussed the "safety rule" concept, and SEPTA responded at length with its own arguments on that very issue. (*See* R.R. at 339a-42a.) Furthermore, the language of Appellant's Rule 1925(b) statement is not vague; it is appropriately concise, given the mandate that the statement "should not be redundant or provide lengthy explanations as to any error." Pa. R.A.P. 1925(b)(4)(iv). Appellant did not, therefore, waive any argument by crafting a brief that focuses on issues subsidiary to the larger issue of negligence that Appellant preserved.

## B. Summary Judgment

Appellant argues on appeal[6] that the trial court erred in granting SEPTA's renewed motion for summary judgment. Specifically, Appellant alleges two distinct errors on the part of the trial court: (1) the trial court erred in concluding that SEPTA did not owe a duty to implement the AIPP properly as part of its duty to provide a reasonably safe workplace under the FELA; and (2) the trial court erred in deciding on its own, rather than allowing a jury to decide, whether Appellant showed that SEPTA breached its duty under the FELA by failing to implement the AIPP properly.

Generally, "[s]ummary judgment is properly granted 'whenever there is no genuine issue of material fact as to a necessary element of the cause of action,'" having viewed the record in the light most favorable to the non-moving party. *Laich*

---

[6] "An order of a trial court granting summary judgment may be disturbed by an appellate court only if the court committed an error of law . . . ; thus, our standard of review is *de novo*, and our scope of review is plenary." *LJL Transp., Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639, 647 (Pa. 2009).

7

*v. Bracey*, 776 A.2d 1022, 1024 (Pa. Cmwlth. 2001) (quoting Pa. R.C.P. No. 1035.2(1)). In FELA cases, however, a movant must meet a higher standard to obtain summary judgment, because "[j]udicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death." *Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 506-07 (1957).[7] The Pennsylvania Superior Court has repeatedly interpreted the *Rogers* standard to mean that "only in the most frivolous cases may the courts deny a[n] FELA plaintiff his qualified right to a jury trial." *Harding v. Consol. Rail Corp.*, 620 A.2d 1185, 1188 (Pa. Super. 1993); *Ciarolla v. Union R.R. Co.*, 338 A.2d 669, 671 (Pa. Super. 1975) (en banc). "Thus, only in those extremely rare instances when there is a zero probability either of employer negligence or that any such negligence contributed to the injury of an employee[] may a court withdraw a case from the jury's consideration." *Harding*, 620 A.2d at 1188.

Appellant first argues on appeal that SEPTA has a duty under the FELA to implement the AIPP effectively because the AIPP is a "safety rule" that SEPTA voluntarily adopted to address a foreseeable risk of injury. In response, SEPTA argues that the AED-related provisions of the AIPP are not a "safety rule" because, unlike safety rules in other cases (as, for example, procedures for lifting heavy objects), they do not purport to address a harm sustained because of the performance

---

[7] "FELA cases adjudicated in state courts are subject to state procedural rules, but the substantive law governing them is federal." *St. Louis Sw. Ry. Co. v. Dickerson*, 470 U.S. 409, 411 (1985); *Labes v. N.J. Transit Rail Operations, Inc.*, 863 A.2d 1195, 1198 (Pa. Super. 2004) (quoting *Harding*, 620 A.2d at 1188), *appeal denied*, 876 a.2d 396 (Pa. 2005). Though this Court, in its application of federal substantive law, is not bound by the decisions of federal district courts, federal circuit courts, or the courts of other states, we may cite such decisions when they have persuasive value. *See Griesser v. Nat'l R.R. Passenger Corp.*, 761 A.2d 606, 612 n.7 (Pa. Super. 2000), *appeal denied*, 775 A.2d 807 (Pa.), *cert. denied*, 534 U.S. 970 (2001).

8

of an employee's work duties. Therefore, SEPTA argues, the FELA duty to provide a reasonably safe workplace does not require SEPTA to provide AEDs to its employees.

Whether a duty exists is "a legal determination, assigned in the first instance to the trial court and subject to plenary appellate review." *Sharpe v. St. Luke's Hosp.*, 821 A.2d 1215, 1219 (Pa. 2003). "Under the FELA, an employer has the duty to provide its employees with a reasonably safe work environment and safe work equipment." *Manson*, 767 A.2d at 3; *see Bailey v. Cent. Vt. Ry.*, 319 U.S. 350, 353 (1943). The FELA duty to provide employees with a reasonably safe workplace is well established and beyond dispute, but, critically for the instant case, the contours of that duty "turn[] in a general sense on the reasonable foreseeability of harm." *Ackley v. Chi. & N. W. Transp. Co.*, 820 F.2d 263, 267 (8th Cir.1987) (citing *Gallick v. Balt. & O. R.R.*, 372 U.S. 108, 117 (1963) ("[R]easonable foreseeability of harm is an essential ingredient of [FELA] negligence.")).

In *Gallick,* the United States Supreme Court upheld a jury's finding of employer negligence under the FELA. The railroad employer had allowed a pool of fetid water to accumulate on its property and attract dangerous insects, one of which bit an employee, ultimately necessitating the amputation of the employee's legs. The railroad denied negligence on the ground that "no duty arose to exercise due care to protect [the employee]" from the risk of insect bites. *Gallick*, 372 U.S. at 110 (internal quotation marks omitted). The Court disagreed and concluded that such an injury was reasonably foreseeable, such that the railroad's standard of care under the FELA included the obligation to mitigate the heightened risk of insect bites in the area around the pool. Specifically, the Court held:

9

"[The] requirement [of reasonable foreseeability] has been satisfied in the present case by the jury's findings of negligence in maintaining the filthy pool of water. The jury had been instructed that negligence is the failure to observe that degree of care which people of ordinary prudence and sagacity would use under the same or similar circumstances; and that defendant's duty was measured by what a reasonably prudent person would anticipate as resulting from a particular condition . . . . Thus when the jury found these facts: [the employee] was bitten by an insect; the insect bite caused illness or disease and led to [the employee's] present physical condition; the stagnant pool attracted bugs and vermin and was responsible for the insect bite and the injuries to [the employee]; and [the railroad] knew that the accumulation of the pool of water would attract bugs and vermin to the area—it is clear that the jury concluded that [the railroad] should have realized the *increased likelihood* of an insect's biting petitioner while he was working in the vicinity of the pool.

*Gallick*, 372 U.S. at 117-19 (emphasis added).

*Gallick* demonstrates that an employer's FELA duty is to use due care in mitigating risks to an employee that are *increased* by the employee's presence at the workplace. Although the FELA is a remedial statute that protects employees, it "does not make the employer the insurer of the safety of his employees while they are on duty." *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 543 (1994) (quoting *Ellis v. Union Pac. R.R. Co.*, 329 U.S. 649, 653 (1947)). The FELA standard of care, therefore, does not extend to mitigating risks that arise from life in general, rather than from an employee's duties or presence at the workplace in particular. *See Bailey*, 319 U.S. at 353.

This distinction—between general, baseline risks, on one hand, and risks that are *heightened* in the workplace, on the other—helps explain the results in many FELA cases. *See, e.g.*, *Gallose v. Long Island R.R. Co.*, 878 F.2d 80, 86 (2d Cir. 1989) (holding that jury must decide whether coworker routinely brought

10

dog to work in course of employment, and whether railroad's duty included duty to warn of heightened risk of dog bite); *Ybarra v. Burlington N., Inc.*, 689 F.2d 147, 151 (8th Cir. 1982) (holding that jury could conclude that nonenforcement of railroad's heavy lifting safety procedures was breach of FELA duty which caused employee's repetitive lifting injury); *Lehman v. Nat'l R.R. Passenger Corp.*, 661 A.2d 17 (Pa. Super. 1995) (affirming summary judgment in favor of railroad when piece of regulation-sized, properly stored luggage fell on train conductor's foot), *appeal denied*, 672 a.2d 308 (Pa. 1996). In the terms of those cases, the FELA may or may not impose a standard of care with respect to dog bites, repetitive stress injuries, or falling objects, all depending on whether a *heightened* risk to the employee is reasonably foreseeable.

Applying the foregoing analysis in the instant case, we first note that SEPTA does not dispute that Devlin was acting in his role as an employee at the time he suffered cardiac arrest and that, therefore, the FELA applies.[8] There is, therefore, no dispute that SEPTA owed Devlin a duty to provide a reasonably safe workplace, but the parties disagree as to the standard of care that SEPTA must exercise with respect to AEDs. It is apparent, however, that before the trial court, the parties did not attempt to define that standard of care in the terms we have set

___

[8] As part of its argument, SEPTA asserts that "Devlin was not performing his SEPTA-related duties when his cardiac event occurred," and that there is "no connection between his job duties and his alleged injuries." (Br. for Appellee at 47.) SEPTA also asserts that "Devlin was not assigned to work at the [Courtland Y]ard. No one knows for sure why he was there." (*Id.* at 6.) Taken together, one could read these assertions as suggesting that Devlin was not acting in the role of an employee when he suffered cardiac arrest. For clarification, therefore, we note that the record supports—but may not conclusively establish—the fact that Devlin's employment required him to refuel his truck at the Courtland Yard on the morning in question. (*See* R.R. at 226a.) Indeed, SEPTA admits in its brief that Devlin "was presumably working" at the time of his injury. (Br. for Appellee at 36.)

11

forth above—*i.e.*, by addressing whether the risk (of cardiac arrest) that caused Devlin's injury is one that is foreseeably heightened by Devlin's employment. There is nothing in the record (including Appellant's proffered expert testimony) that addresses any such heightened risk of harm. The trial court concluded, however, that the AIPP is not a "safety rule"[9] and that SEPTA's FELA duty did not include "anticipating [Appellant's] heart attack[,] nor did it mandate providing assistance to him in the form of the use of an AED." (Br. for Appellant, trial court op. at 11.) Although it may be true that there is no generally applicable FELA duty to implement specific AED policies—or to provide any AEDs or training at all—we can imagine circumstances under which the foreseeable risk of cardiac events involved in certain employment could impose a heightened standard of care with respect to AEDs in the workplace.[10] Accordingly, the trial court erred in attempting to define the appropriate FELA standard of care with respect to AEDs without a record addressing the reasonable foreseeability of the risk of cardiac arrest

---

[9] Much of Appellant's argument below and on appeal has focused on characterizing the AIPP as a "safety rule"—a status which, under some FELA case law, would require implementation of the AIPP in order to fulfil the duty to provide a reasonably safe workplace. *See Ackley*, 820 F.2d at 268; *Ybarra*, 689 F.2d at 150; *Harding*, 620 A.2d at 1189. We will not, however, be drawn into so narrow an analysis of the proper standard of care under the FELA. This is particularly so because neither Pennsylvania courts nor the United States Supreme Court has addressed the question of what constitutes a "safety rule" within the meaning of FELA case law. Without such guidance, even Appellant's preferred "safety rule" theory would require us ultimately to return to the guidance we give here—*i.e.*, that the FELA standard of care turns on reasonable foreseeability of risk under certain conditions of employment.

[10] For example, if an employer subject to the FELA employed workers under circumstances that exposed them to a heightened risk of electric shock and, therefore, a heightened risk of cardiac arrest, during their employment, a jury could conceivably find that the employer bears a heightened standard of care with respect to making AEDs and training available to those employees. Such a finding would depend—as it did in *Gallick*—on the degree to which the risk is heightened and reasonably foreseeable under the circumstances.

12

associated with Devlin's employment. In the instant case, however, because the record is devoid of any evidence suggesting a heightened risk of cardiac events for SEPTA employees, no genuine issue of material fact exists concerning SEPTA's standard of care with respect to AEDs. Thus, we will affirm the order of the trial court granting summary judgment for SEPTA, albeit based upon slightly different reasoning than that advanced by the trial court.[11]

## C. Motion *In Limine*

Appellant also argues on appeal[12] that the trial court erred in granting SEPTA's motion *in limine* to preclude Darius' expert testimony. First, Appellant claims that the evidentiary rule on which the trial court based its decision— Pa. R.E. 403 (Rule 403)[13]—is generally not susceptible of accurate pretrial evaluation. Second, Appellant asserts that Darius' testimony about the OSHA regulations and publications is highly relevant as a model for the effective implementation of the AIPP and to show that SEPTA did not implement the AIPP

---

[11] During oral argument, counsel for Appellant represented that Appellant is not asking this Court to consider any theory of the case other than the "safety rule" analysis we have described and rejected above. We see no need to remand this matter to the trial court for application of the guidance we give here under a theory of the case which Appellant will not adopt.

Further, because our conclusion here is dispositive, we do not address Appellant's argument on appeal that, in granting summary judgment, the trial court improperly overlooked genuine issues of material fact as to SEPTA's breach of a duty under the FELA.

[12] While we generally review a trial court's ruling on admissibility of evidence for an abuse of discretion, *Commonwealth v. Edwards*, 903 A.2d 1139, 1156 (Pa. 2006), whether Rule 403 should be applied before trial is a question of law which we review *de novo*. *Cmwlth. v. Hicks*, 91 A.3d 47, 52 (Pa. 2014).

[13] Rule 403 provides:

> The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

13

effectively. Appellant emphasizes that Darius' testimony is offered not to prove a violation of OSHA regulations but instead to show that SEPTA could have implemented an AED policy more effectively, as demonstrated by OSHA's guidelines regarding AEDs. In response, SEPTA argues that Darius' testimony is more prejudicial than probative, because the OSHA regulations themselves do not mention AEDs and the Guide's AED provisions are nonbinding.

Considering Darius' testimony in light of our analysis of the summary judgment issue, we note that his testimony, which Appellant sought to introduce to support Appellant's theory of SEPTA's breach of a duty, does not address whether any SEPTA employees are exposed to an increased risk of cardiac events that would suggest a heightened standard of care with respect to AEDs under the FELA. The trial court, therefore, did not err in granting SEPTA's motion *in limine*, as Darius' testimony did nothing to establish that SEPTA breached any duty owed to Appellant under the analysis discussed above.

## IV.  CONCLUSION

For the foregoing reasons, we will affirm the order of the trial court granting summary judgment in favor of SEPTA.

P. KEVIN BROBSON, Judge

14

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nicole Desher (Guardian ad litem :
of Patrick Devlin), :
     Appellant :
          :
    v.   : No. 1529 C.D. 2018
          :
Southeastern Pennsylvania :
Transportation Authority (SEPTA) :

## O R D E R

AND NOW, this 27th day of June, 2019, the order of the Court of Common Pleas of Philadelphia County (trial court), dated June 19, 2018, granting summary judgment in favor of SEPTA, is AFFIRMED.

<br>

                  _____
                  P. KEVIN BROBSON, Judge