National Hockey League :
Players Association, Major League :
Baseball Players Association, :
National Football League :
Players Association, Jeffery :
B. Francoeur, Kyle C. Palmieri, :
and Scott Wilson :
                        :
       v.               :   No. 1150 C.D. 2022
                        :
City of Pittsburgh, :
           Appellant       :   Argued: October 11, 2023

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                  HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE MICHAEL H. WOJCIK, Judge
                  HONORABLE CHRISTINE FIZZANO CANNON, Judge
                  HONORABLE ELLEN CEISLER, Judge
                  HONORABLE LORI A. DUMAS, Judge
                  HONORALBE STACY WALLACE, Judge

OPINION
BY JUDGE CEISLER                        FILED: January 10, 2024

The City of Pittsburgh (City) appeals from the September 21, 2022 order of the Court of Common Pleas of Allegheny County (trial court), which held that a facility usage fee (Facility Tax)[1] enacted by the City pursuant to Section 271.03(a) of the City Ordinance (Ordinance)[2] violated article VIII, section 1 of the

---

[1] The City concedes that the facility usage fee is a tax.

[2] City of Pittsburgh, Pa., Ordinance § 271.03(a) (Nov. 14, 2016).

Pennsylvania Constitution (Uniformity Clause),[3] and issued an injunction prohibiting the City from imposing and collecting the Facility Tax. The issues before this Court are whether the Facility Tax violates the Uniformity Clause and, assuming this Court agrees that the Facility Tax is unconstitutional, whether the trial court erred in issuing an injunction, as the unconstitutional language could have been severed from Section 271.03(a) of the Ordinance. After careful review, we affirm the trial court.

## I. Background

The underlying facts in this matter are not disputed. Section 304 of The Local Tax Enabling Act (Tax Act)[4] provides that a second-class city[5] with a publicly funded sports stadium or arena (Facility) may impose a Facility Tax "upon those **nonresident individuals** who use [a Facility] to engage in an athletic event or otherwise render a performance for which they receive remuneration." The Facility Tax may be a flat dollar amount or up to 3% of the income attributed to the nonresidents' usage of the Facility. Individuals liable for the Facility Tax are exempt from any earned income tax (EIT) imposed by the City. Section 304 also provides that, "[s]hould a court of competent jurisdiction determine this provision to be invalid for any reason," anyone previously obligated to pay the Facility Tax is no longer exempt from paying EIT imposed by the City. 53 P.S. § 6924.304.

---

[3] The Uniformity Clause provides that "[a]ll taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." Pa. Const. art. VIII, § 1.

[4] Act of December 31, 1965, P.L. 1257, *as amended*, added by the Act of December 1, 2004, P.L. 1729, 53 P.S. § 6924.304.

[5] The City is a second-class city. *Firearm Owners Against Crime v. City of Pittsburgh*, 276 A.3d 878, 900 (Pa. Cmwlth. 2022).

Under the authority granted by Section 304 of the Tax Act, the City enacted Section 271.03(a) of the Ordinance. Residents who earn income at one of the City's Facilities do not pay the Facility Tax; instead, they pay a 1% EIT on salaries, wages, commissions, and other compensation earned. Residents also pay a 2% school tax that benefits the Pittsburgh School District (District). Nonresidents who perform work in the City, but do not earn income from one of the Facilities, also pay a 1% EIT. They do not pay any school tax, as Section 652.1(a)(4) of the Public School Code of 1949 (School Code) expressly prohibits the imposition of school taxes on any person who does not reside in that district.[6]

Section 271.05(b) of the Ordinance, Ordinance § 271.05(b), establishes the method for calculating the percentage of a nonresident's income that is subject to the Facility Tax. The Facility Tax for a nonresident National Football League (NFL) player is based on the player's "duty days" that take place within the City. Duty days include preseason, regular season, and postseason practice sessions and games. The Facility Tax for nonresident Major League Baseball (MLB) and National Hockey League (NHL) athletes is based only on the number of games played within the City, including exhibition, preseason, regular season, and postseason games. Practice sessions, whether held inside or outside the City, are not considered when calculating the percentage of an MLB or NHL player's income that is subject to the Facility Tax. The Facility Tax for nonresident "non-player personnel," such as coaches, trainers, and game officials, is based on the number of days worked in the City. Ordinance § 271.05(c). In each case, the total number of duty days, games, or working days that occur in the City is divided by the total number of a nonresident's duty days, games, or working days. Finally, the Facility Tax for nonresident

---

[6] Act of March 10, 1949, P.L. 30, *as amended*, added by the Act of December 19, 1975, P.L. 511, 24 P.S. § 6-652.1(a)(4).

entertainers is based on earned income that is attributable to a performance held in a Facility.[7]

The NHL Players Association, the MLB Players Association, the NFL Players Association, Jeffery B. Francoeur, Kyle C. Palmieri, and Scott Wilson (collectively, Appellees),[8] filed a civil complaint action against the City, alleging that the Facility Tax is facially discriminatory under the United States and Pennsylvania Constitutions and seeking an injunction that would prevent the City from imposing and collecting the Facility Tax.[9] On September 21, 2022, the trial court issued an order granting a motion for summary judgment filed by Appellees. In its memorandum opinion, the trial court held that the Facility Tax violated the Uniformity Clause, which provides that "[a]ll taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax . . . ."

The trial court noted that, while the Uniformity Clause does not require perfect uniformity or exact equality, the Uniformity Clause is violated where the method used to compute the tax produces arbitrary, unjust, or discriminatory results. The trial court held that the Facility Tax makes a facial distinction between residents and nonresidents, as nonresidents who earned income from one of the Facilities were subject to the Facility Tax, while residents, who also earned income from one of the Facilities, were not. Thus, nonresident athletes paid a 3% tax while resident athletes paid a 1% EIT. The trial court considered the resident/nonresident distinction

---

[7] Section 271.05 does not provide a calculation method for nonresident personnel traveling with an entertainer.

[8] Jeffery B. Francoeur, Kyle Palmieri, and Scott Wilson are professional athletes who competed as members of the City's professional athletic clubs or a visiting professional athletic club.

[9] Appellees have not challenged the constitutionality of Section 304 of the Tax Act.

4

unreasonable and violative of the Uniformity Clause. The trial court rejected the City's argument that residents and nonresidents bore an equivalent tax burden of 3%, because the 2% school tax paid by residents was levied by the District, not the City. The trial court declined to find uniformity in a tax levied by a separate entity for a separate purpose. Accordingly, the trial court declared the Facility Tax unconstitutional and enjoined the City from further assessing, imposing, or collecting the Facility Tax.

In its opinion filed pursuant to Pa.R.A.P. 1925(a), the trial court addressed the City's argument that the trial court should have severed the unconstitutional language from Section 271.03 of the Ordinance by removing the word "nonresident." The trial court rejected this argument, as the effect of such a decision would impose the Facility Tax on residents, which the enabling legislation, Section 304 of the Tax Act, does not contemplate. Instead, Section 304 of the Tax Act provides that, should a court invalidate Section 304, nonresidents who were previously subject to the Facility Tax would no longer be exempt from paying EIT. The trial court found that this language would require the payment of EIT by nonresidents, not imposition of the Facility Tax on residents. In the absence of a clear intent from the General Assembly that the Facility Tax should be assessed on residents and nonresidents, the trial court opined that it lacked authority to effectuate such a tax by striking "nonresident" from Section 271.03 of the Ordinance.

## II. Issues

On appeal,[10] the City argues that the trial court erred in concluding that the Facility Tax violated the Uniformity Clause. Alternatively, should this Court

---

[10] An order of a trial court granting summary judgment may be disturbed by an appellate court only if the trial court committed an error of law. Thus our standard of review is *de novo* and **(Footnote continued on next page…)**

conclude that the Facility Tax is unconstitutional, the City argues that the trial court erred in issuing an injunction, as the problematic language could have been severed from Section 271.03(a) of the Ordinance.

## III. Discussion

### A. Uniformity Clause

The Uniformity Clause requires that taxes be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and they shall be levied and collected under general laws. Our Supreme Court has stated that taxation is not a matter of exact science. "[A]bsolute equality and perfect uniformity are not required to satisfy" the Uniformity Clause. *Clifton v. Allegheny Cnty.*, 969 A.2d 1197, 1210 (Pa. 2009). "[R]ough uniformity with a limited amount of variation is permitted[,]" provided that the taxing scheme does not impose "substantially unequal tax burdens[.]" *Id.* at 1210-11. In challenging the constitutionality of taxation under the Uniformity Clause, a taxpayer must demonstrate that the enactment results in some form of classification, which is unreasonable and not rationally related to a legitimate state purpose. A taxing authority has broad authority and wide discretion in matters of taxation, and it is presumed that, when enacting any statute, the taxing authority does not intend to violate the United States or Pennsylvania Constitutions. A tax enactment will not be invalidated unless it "clearly, palpably, and plainly violates the Constitution." *Id.* at 1211. Judicial review of an allegedly unconstitutional tax enactment focuses on whether there is "some concrete justification for treating the relevant group of taxpayers as members of distinguishable classes subject to different tax burdens." *Id.* The Uniformity

---

our scope of review is plenary. *Desher v. Se. Pa. Transp. Auth.*, 212 A.3d 1179, 1185 n.6 (Pa. Cmwlth. 2019).

6

Clause is violated when the method or formula for computing the tax "produce[s] arbitrary, unjust, or unreasonably discriminatory results[.]" *Id.*

A legislative enactment is facially unconstitutional only where no set of circumstances exists under which the enactment would be valid. *Id.* at 1222. In determining whether an enactment is facially unconstitutional, the court must not go beyond the enactment's facial requirements and speculate about hypothetical or imaginary cases. *Id.* The invalid applications of an enactment must be real and substantial, and they are judged in relation to the enactment's "plainly legitimate sweep." *Id.* A presumption of inevitable unjust application and a perceived flaw in the taxing authority's intent is not sufficient to render an enactment facially invalid. *Id.* at 1223.

The City argues that the tax burden on both residents and nonresidents is 3%, as residents pay a 1% earned income tax and a 2% school tax, while nonresidents pay the 3% Facility Tax. Because the overall tax burden is the same, the City contends that the Facility Tax does not violate the Uniformity Clause. The City relies on *Minich v. City of Sharon*, 77 A.2d 347 (Pa. 1951), in which our Supreme Court held that a 10 mills tax imposed on nonresidents who earned income working in the City of Sharon did not violate the Uniformity Clause where residents of the City of Sharon only paid a 5 mills tax on income, because residents also paid a 5 mills tax to the school district. The City notes that, prior to enactment of the Facility Tax, residents and nonresidents paid a 1% EIT. Residents paid an additional 2% school tax. The City argues that enactment of the Facility Tax rectifies this imbalance. The City also argues that the Facility Tax serves the legitimate state purpose of financing the Facilities in which professional sports events are held,

"from which nonresident athletes and entertainers benefit immensely." City's Br. at 6.

In *Minich*, the City of Sharon enacted an ordinance that assessed a tax of 10 mills per dollar earned on residents of the City of Sharon and nonresidents who worked for the City of Sharon, effective January 1, 1950. On June 27, 1949, the City of Sharon School District (SSD) adopted a resolution imposing a tax of 5 mills per dollar earned on residents of SSD, for the period of January 1, 1950 to July 2, 1950. In light of the 5 mills tax imposed by SSD, the City of Sharon only collected a 5 mills tax from its residents. Nonresidents who worked in the City of Sharon filed an action arguing that they should not be required to pay a 10 mills tax where residents only paid a 5 mills tax.

The Supreme Court held that the tax scheme was not discriminatory, as the City of Sharon and SSD imposed their taxes pursuant to the Act of June 25, 1947, P.L. 1145 (1947 Act),[11] and Section 5 of the 1947 Act explicitly provided that the payment of any tax on wages to a political subdivision acted as a credit towards any other tax on wages imposed by another political subdivision. Because residents were entitled to a credit for the 5 mills tax paid to SSD, the 10 mills tax, if imposed in full, would have been reduced to 5 mills regardless.

Appellees argue that the City has failed to demonstrate any justification for classifying the individuals liable for the Facility Tax based on their status as nonresidents. Appellees note that the 2% school tax paid by residents to the District cannot by law be imposed on nonresidents and they suggest that a tax on nonresidents cannot be rendered uniform on the basis of a different tax paid by residents to a separate taxing authority for services enjoyed solely by residents.

---

[11] Repealed by the Act of December 31, 1965, P.L. 1257.

8

Furthermore, Appellees point out that the Facility Tax cannot be used as a credit towards any EIT paid by nonresidents to the political subdivision in which they live, nor are nonresidents permitted to reduce the amount of the Facility Tax owed by any EIT paid to the municipality in which they reside. Appellees cite *Danyluk v. Bethlehem Steel Co.*, 178 A.2d 609 (Pa. 1962), as dispositive of this matter, as the Supreme Court in *Danyluk* invalidated a tax imposed on individuals solely based on their status as nonresidents. In addition, Appellees contend that the Facility Tax arbitrarily distinguishes between taxpayers based on their occupations, as nonresident doctors or lawyers, for example, are not required to pay the Facility Tax.

Finally, Appellees challenge the method of calculating the amount of the Facility Tax owed by a particular athlete because the Facility Tax paid by NFL players is based on "duty days" held in the City, while the Facility Tax for NHL and MLB players is based solely on the number of games played. Appellees suggest that excluding NHL and MLB practices held outside the City from the calculation artificially inflates the percentage of work they perform in the City.

In *Danyluk*, the City of Johnstown (Johnstown) enacted an ordinance imposing a $10 occupational tax on nonresidents who engage in any occupation within Johnstown's corporate limits. The stated purpose of the tax was to provide revenue for capital improvements in Johnstown. Nonresidents employed in Johnstown filed an action alleging the occupational tax was unconstitutional, as it only applied to nonresidents. Johnstown argued that the tax was uniform because a $10 per capita tax was imposed upon residents. The Supreme Court rejected Johnstown's argument, as the tax was not an occupational tax, which would be based on the assessed value of an occupation. The occupational tax Johnstown imposed on nonresidents made no distinction as to the occupation of the person taxed, or the

9

amount of income earned by the nonresident – rather, it taxed nonresidents a flat $10. Furthermore, the purpose of the tax was to generate revenue for services benefiting residents of Johnstown. The Supreme Court held that the occupational tax was, in reality, a "direct levy upon persons[,]" which constituted a capitation tax that could only be imposed on residents of Johnstown. *Id.* at 610. Accordingly, the Supreme Court rejected the tax as unconstitutional, noting that a taxpayer's residence could not be used as the basis for "discrimination in taxation of persons engaged in the same occupation or profession." *Id.*

The City overstates the relevance of *Minich*, which concerned a different tax enactment that explicitly provided resident taxpayers a credit for other taxes paid to another political subdivision. Although the parties agree that the Facility Tax is a tax, there is no evidence to suggest that nonresidents can offset the amount of the Facility Tax by the amount of EIT paid to another taxing authority. Even if this Court were to assume that 1% of the Facility Tax represents the 1% EIT imposed on nonresidents prior to the enactment of Section 271.03(a) of the Ordinance, the Facility Tax otherwise burdens nonresidents with an additional 2% tax on earned income that is not assessed on residents. The 2% school tax paid by residents is not relevant to our analysis, as the District is prohibited from imposing school taxes on nonresidents, per Section 652.1(a)(4) of the School Code. The City has not suggested that the school taxes paid by residents offset the cost of maintaining the Facilities, the use of which clearly benefits residents who earn income in those Facilities. If we exclude the 2% school tax from our analysis, it is clear that the City has effectively imposed a 3% EIT on nonresidents who derive income from the

10

City's Facilities, while imposing a 1% EIT on residents who similarly derive income from the Facilities.[12]

The City has failed to provide the requisite concrete justification for treating residents and nonresidents as distinguishable classes that may be subjected to different tax burdens. Rough uniformity is not achieved where only one class of taxpayers – nonresidents – is assessed a 2% tax on income derived from its use of the Facilities. Accordingly, we conclude that the Facility Tax violates the Uniformity Clause.

## B. Severability

As we have concluded that the Facility Tax violates the Uniformity Clause, we turn to whether the trial court should have severed the invalid language from Section 271.03(a) of the Ordinance.

Section 1925 of the Statutory Construction Act of 1972 states that

> [t]he **provisions of every statute shall be severable**. **If any provision** of any statute or the application thereof to any person or circumstance **is held invalid, the remainder of the statute**, and the application of such provision to other persons or circumstances, **shall not be affected** thereby, **unless** the court finds that **the valid provisions** of the statute **are so essentially and inseparably connected** with, and so depend upon, the void provision or application, **that it cannot be presumed the General Assembly would have enacted the remaining valid provisions** without the void one; **or**

---

[12] The dissent distinguishes *Danyluk* from the instant appeal on the basis that the tax in *Danyluk* was "essentially a capitation tax which could never be charged to nonresidents." *Nat'l Hockey League Players Ass'n v. City of Pittsburgh*, _ A.3d _, _ (Pa. Cmwlth., No. 1150 C.D. 2022, filed January 10, 2024). This does not undermine our reliance on *Danyluk*. While residents and nonresidents alike pay a 3% tax based on their earned income, 2% of the tax assessed on residents represents school taxes, which may not be imposed on nonresidents. Nonresidents, on the contrary, pay a 3% EIT to the City based on their use of Facilities. Therefore, although both residents and nonresidents derive income from their use of the Facilities, only nonresidents bear the tax burden associated with that use.

11

unless the court finds that **the remaining valid provisions**, standing alone, are incomplete and **are incapable of being executed** in accordance with the legislative intent.

1 Pa.C.S. § 1925 (emphasis added).

Pennsylvania public policy favors severability of statutes containing unconstitutional provisions. *Phantom Fireworks Showrooms, LLC v. Wolf*, 198 A.3d 1205, 1228 (Pa. Cmwlth. 2018). The legislature's intent is of primary significance when determining severability. In determining legislative intent, a court reviews whether, with the unconstitutional portion of the statute removed, the legislature would prefer what remains of the statute to no statute at all. *Id.* at 1229. Additionally, a court will decline to sever an unconstitutional provision where, after excising the voided provisions, the remainder of the statute is incapable of execution in accordance with the legislature's intent. *See Protz v. Workers' Comp. Appeal Bd. (Derry Area Sch. Dist.)*, 161 A.3d 827 (Pa. 2017).

Section 271.03(a) imposes the Facility Tax on every nonresident "who earns compensation for services at a [Facility]," based on the income attributable to the Facility. Striking the word nonresident from Section 271.03(a) would result in the imposition of a 3% Facility Tax on any individual "who earns compensation for services at a [Facility]" based on the earned income "paid or payable to any . . . employee" for services rendered at the Facility.

The City suggests that the Facility Tax's constitutional infirmity may be resolved by replacing the word "nonresident" with "individual." City's Br. at 24. It argues that the legislative intent of the Facility Tax – to ensure funding for the Facilities – would be served if imposed on resident and nonresident alike. Section 209.01(c) of the Ordinance contains a savings clause for any provision held unconstitutional. Those not deemed unconstitutional would remain in full force and

12

effect. Section 209.01(c) also provides that "[t]he intent of the [City] Council is that the [Ordinance provisions] shall be severable . . . and would have been adopted if any illegal [or] unconstitutional provisions had not been included."

We disagree, as the Facility Tax cannot be salvaged by removing the word "nonresident" from Section 271.03(a) of the Ordinance. The legislation authorizing the Facility Tax, Section 304 of the Tax Act, only provides for its enactment and assessment on compensation earned by nonresidents. It does not permit the imposition of a Facility Tax on residents. Furthermore, Section 304 provides that nonresidents who pay the Facility Tax are exempt from paying any EIT that the City could otherwise impose. The exemption no longer applies if Section 304 is invalidated by a court. Clearly, in drafting Section 304 with this language, the General Assembly preferred that an ordinance adopted pursuant to Section 304 would be stricken entirely if held unconstitutional, and not expanded to encompass residents who earn income at one of the City's Facilities. This Court cannot supply omissions in a statute when it appears that the matter was intentionally omitted. *Sivick v. State Ethics Comm'n*, 238 A.3d 1250, 1264 (Pa. 2020). The savings clause in Section 209.01(c) of the Ordinance is not relevant, as the Facility Tax is only authorized by operation of Section 304 of the Tax Act.

**IV. Conclusion**

The Facility Tax imposed by the City on nonresidents who derive income from one of the City's Facilities violates the Uniformity Clause of the Pennsylvania Constitution. Section 304 of the Tax Act only permits imposition of the Facility Tax on nonresidents. The trial court did not err in enjoining the City from imposing and collecting the Facility Tax, as striking the word "nonresidents" from Section

13

271.03(a) of the Ordinance would expand the scope of Section 304 beyond that intended by the General Assembly.  Accordingly, we affirm the trial court.

_____
ELLEN CEISLER, Judge

Judge Dumas concurs in the result only.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

National Hockey League : 
Players Association, Major League : 
Baseball Players Association, : 
National Football League : 
Players Association, Jeffery : 
B. Francoeur, Kyle C. Palmieri, : 
and Scott Wilson : 
: 
v. : No. 1150 C.D. 2022
: 
City of Pittsburgh, : 
                Appellant : 

# **O R D E R**

AND NOW, this 10th day of January, 2024, the September 21, 2022 order of the Court of Common Pleas of Allegheny County is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

National Hockey League Players    :
Association, Major League Baseball    :
Players Association, National Football    :
League Players Association, Jeffery B.    :
Francoeur, Kyle C. Palmieri and Scott    :
Wilson    :
    :
            v.    :  No. 1150 C.D. 2022
    :  Argued: October 11, 2023
City of Pittsburgh,    :
            Appellant    :

BEFORE:    **HONORABLE RENÉE COHN JUBELIRER,** President Judge
                   **HONORABLE PATRICIA A. McCULLOUGH,** Judge
                   **HONORABLE MICHAEL H. WOJCIK,** Judge
                   **HONORABLE CHRISTINE FIZZANO CANNON,** Judge
                   **HONORABLE ELLEN CEISLER,** Judge
                   **HONORABLE LORI A. DUMAS,** Judge
                   **HONORABLE STACY WALLACE,** Judge

**DISSENTING OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**         **FILED: January 10, 2024**

At issue in this case is whether the City of Pittsburgh's (City) attempt to charge a Facility Fee (tax) to nonresident athletes and entertainers to subject them to a local tax rate equal to that of residents runs afoul of the Pennsylvania Constitution's guarantee that "[a]ll taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax . . . ." PA. CONST. ART. VIII, § 1 (Uniformity Clause). Because I believe, in substance, the City has treated residents and nonresidents alike with respect to their respective tax burdens, I must respectfully dissent from the Majority's scholarly opinion concluding that the tax at issue in this case violates of the Uniformity Clause.

At the outset, I must emphasize that our Commonwealth's Uniformity Clause jurisprudence has not always been a model of clarity, so disagreement is to be expected. Indeed, "[d]espite the well-understood text and impetus of the Uniformity Clause, [our Supreme Court] occasionally [has] struggled to articulate [its] precise limits." *Mount Airy #1, LLC v. Pa. Dep't of Revenue*, 154 A.3d 268, 273 (Pa. 2016). Notably, our high Court has recently reiterated that "[n]o provision in our constitution has been **so much litigated** yet **so little understood**." *Id.* (quoting *In re Lower Merion Township*, 233 A.2d 273, 276 (Pa. 1967) (emphasis added) (internal quotation marks omitted)).

However, many aspects of our standard of review in a case like this are well settled. "[W]hen challenging a taxing statute, it is the **taxpayer's burden** to demonstrate, [(i)] not only that the enactment results in some form of classification, but also [(ii)] that such classification is unreasonable, in that it is not rationally related to any legitimate state purpose." *Wilson Partners, L.P. v. Bd. of Fin. & Revenue*, 737 A.2d 1215, 1220 (Pa. 1999) (emphasis added). We begin with the **presumption** that taxation statutes are constitutional, and we only invalidate such enactments when they "**clearly**, **palpably**, and **plainly** violate[] the Constitution." [1] *Id.* (emphasis in original). And notwithstanding any confusion this area of state constitutional law might generate, I must note that any doubt must be resolved in favor of constitutionality. *Appeal of Torbik*, 696 A.2d 1141, 1145 (Pa. 1997).

---

[1] However, confusion also exists because while "the Supreme Court has held that the Equal Protection Clause of the Fourteenth Amendment and the Uniformity Clause . . . are largely coterminous . . . and are to be analyzed in the same manner[,]" it is also true that "the two constitutional provisions are only sometimes in alignment." *Mount Airy #1*, 154 A.3d at 274. However, the Supreme Court has not clearly articulated in what precise ways the Uniformity Clause might "provide[] greater protections[.]" *Id.*

The Uniformity Clause, in my view, is primarily concerned about equality of tax burden among members of a class. *See Fox's Appeal*, 4 A. 149, 153 (Pa. 1886) (Uniformity Clause "was intended to and does sweep away forever the power of the legislature to impose unequal burdens upon the people under the form of taxation."). Moreover, the first step in the analysis is to determine whether "the enactment results in some form of classification" in the first instance. *Wilson Partners*, 737 A.2d at 1220. Accordingly, I agree with the City that here, because the purpose of the tax is to **equalize** tax treatment between classes, no impermissible classification results. (City's Brief (Br.) at 14.) Resident and nonresident athletes and entertainers both ultimately pay a 3% total local tax on income attributable to their work in Pittsburgh, though all 3% of nonresidents' share goes to the general fund, while 1% of residents' share goes to the general fund, and 2% to the local school district. (Common Pleas Opinion at 7.) I do not believe that the ultimate **destination** of the tax revenue to either the City's general fund or to its schools changes that result.[2] Rather, what matters is the overall burden experienced by the taxpayers.[3]

---

[2] Maryland's high court has decided a case the logic of which I find persuasive here. In *Frey v. Comptroller of Treasury*, 29 A.3d 475 (Md. 2011), the question was whether a tax that charged nonresidents the equivalent of a county-level tax (to which they were not otherwise subject), which never went to any county, but rather to the state's general fund, violated equal protection. *Id*. at 126. That court was not persuaded that the source of the funds made a difference, but rather explained, "even if nonresident taxpayers contribute more in taxes to the General Fund, **the total amount contributed by nonresidents and residents** to funding the costs of providing State and local governmental services **is the same**." *Id*. at 507 (emphasis added).

[3] I would also submit that any reliance on the part of Appellees or common pleas on *Danyluk v. Bethlehem Steel Company*, 178 A.2d 609 (Pa. 1962), is misplaced. The *Danyluk* Court reasoned that the tax in question there was essentially a capitation tax which could never be charged to nonresidents. *Id*. at 610. And to the extent *Danyluk* could be read as a per se bar on residency classifications, I would point to *Leonard v. Thornburg*, where the Supreme Court explained that *Danyluk* stands for the proposition that residency **alone** is not enough to sustain a classification. 489 A.2d 1349, 1352 (Pa. 1985).

I would also reject Appellees' argument that the tax's creation of a separate class of entertainers and athletes (regardless of their residency) is a Uniformity Clause problem. (Appellees' Br. at 30.) Our Supreme Court has said that a classification is permissible where it derives from "some legitimate distinction between the classes that provides a non-arbitrary and reasonable and just basis for the difference in treatment." *Leonard v. Thornburgh*, 489 A.2d 1349, 1352 (Pa. 1985) (upholding a classification of residents and nonresidents where there existed "concrete justifications" for the classification beyond "mere residence"). Further, we have upheld classifications that flow from "genuine distinction[s] acknowledged in the business world[.]" *Mandl v. Commonwealth*, 637 A.2d 703, 706 (Pa. Cmwlth. 1994) (finding no Uniformity Clause problem where tax exemption was available to wholesale and not retail bakers based in part on the legislature's legitimate interest in "attract[ing] big business in order to create jobs").

Here, there are certainly legitimate, non-arbitrary reasons for making a distinction between athletes and entertainers and the rest of the general public. I would echo the Ohio Supreme Court's reasoning in that respect. In *Hillenmeyer v. Cleveland Board of Review*, 41 N.E.3d 1164, 1173 (Ohio 2015), Ohio's high court provided two persuasive rationales for the disparate treatment of highly paid athletes and entertainers on the one hand and the rest of the public on the other:

> First, professional athletes are typically highly paid, and their work is easy to find, so that a city could earn significant revenue with comparative ease. Second, the legislature could rationally find that professional athletes and entertainers and their events incur much larger public burdens relating to police protection and traffic and crowd control, among other public services, than do other occasional entrants.

*Id.*[4]  In sum, there are legitimate reasons to classify highly paid athletes and entertainers as a separate class for purposes of taxation.  Accordingly, I do not believe this classification violates the Uniformity Clause.

For these reasons, I do not believe that seeking to equalize the tax treatment of resident and nonresident athletes violates the Uniformity Clause, nor does singling out athletes and entertainers as a class.  Because I would reverse common pleas' Uniformity Clause determination and remand to that court for determination of the remaining issues in this case, I must respectfully dissent.

**RENÉE COHN JUBELIRER,** President Judge

---

[4] In a similar vein, this Court recently upheld a practice, in the property tax assessment appeal context, of a school district's use of "recent sales prices and a cost-benefit formula to determine which property assessments to appeal . . . ." *GM Berkshire Hills LLC v. Berks Cnty. Bd. of Assessment*, 257 A.3d 822, 831 (Pa. Cmwlth. 2021), *aff'd by an evenly divided court*, 290 A.3d 238 (Pa. 2023).  Here, too, the City has a legitimate interest in using its limited resources to focus on this class of taxpayers.